# BRUCE ELLAM *v.* COMMISSIONER OF MOTOR VEHICLES
## (AC 16787)

Lavery, Landau and Hennessy, Js.

Submitted on briefs November 13, 1997—officially released January 27, 1998

*Jeremiah J. O'Connor* filed a brief for the appellant (plaintiff).

*Richard Blumenthal,* attorney general, and *Priscilla J. Green,* assistant attorney general, filed a brief for the appellee (defendant).

*Opinion*

LANDAU, J. The plaintiff, Bruce Ellam, appeals from the judgment of the trial court dismissing his appeal from the administrative decision of the defendant commissioner of motor vehicles (commissioner) suspending his driver's license pursuant to General

Statutes (Rev. to 1995) § 14-227b.[1] The plaintiff claims
that the trial court improperly concluded that there was

[1] General Statutes (Rev. to 1995) § 14-227b, as amended by Public Acts
1995, No. 95-279, § 1, provides in relevant part: "(a) Any person who operates
a motor vehicle in this state shall be deemed to have given his consent to
a chemical analysis of his blood, breath or urine . . . .

"(b) If any such person . . . refuses to submit to the designated test, the
test shall not be given . . . . The police officer shall make a notation upon
the records of the police department that he informed the person that his
license . . . may be suspended if he refused to submit to such test . . . .

"(c) If the person arrested refuses to submit to such test or analysis or
submits to such test or analysis . . . and the results of such test or analysis
indicate that the ratio of alcohol in the blood of such person is ten-hundredths
of one per cent or more of alcohol, by weight, the police officer, acting on
behalf of the commissioner of motor vehicles, shall immediately revoke and
take possession of the motor vehicle operator's license . . . . The police
officer shall prepare a written report of the incident and shall mail the report
together with a copy of the completed temporary license form, any operator's
license taken into possession and a copy of the results of any chemical test
or analysis to the department of motor vehicles . . . . The report shall be
made on a form approved by the commissioner of motor vehicles and shall
be subscribed and sworn to under penalty of false statement . . . by the
arresting officer. If the person arrested refused to submit to such test or
analysis, the report shall be endorsed by a third person who witnessed such
refusal. The report shall set forth the grounds for the officer's belief that
there was probable cause to arrest such person for operating a motor vehicle
while under the influence of intoxicating liquor or any drug or both or while
his ability to operate such motor vehicle is impaired by the consumption
of intoxicating liquor, and shall state that such person had refused to submit
to such test or analysis when requested by such police officer to do so or
that such person submitted to such test or analysis . . . and the results of
such test or analysis indicated that the ratio of alcohol in the blood of such
person was ten-hundredths of one per cent or more of alcohol, by weight.

"(d) Upon receipt of such report, the commissioner of motor vehicles
may suspend any license . . . of such person . . . . Any person whose
license . . . has been suspended in accordance with this subsection shall
automatically be entitled to a hearing before the commissioner to be held
prior to the effective date of the suspension. The commissioner shall send
a suspension notice to such person informing such person . . . that he is
entitled to a hearing prior to the effective date of the suspension . . . .

* * *

"(f) The hearing shall be limited to a determination of the following issues:
(1) Did the police officer have probable cause to arrest the person for
operating a motor vehicle while under the influence of intoxicating liquor
or drug or both or while his ability to operate such motor vehicle was
impaired by the consumption of intoxicating liquor; (2) was such person

substantial evidence in the record to support the commissioner's finding that the plaintiff refused to submit to a chemical analysis of his breath (intoximeter test).

The following facts are undisputed. On January 4, 1996, the plaintiff was stopped by Officer John Laterra of the Middletown police department and was subsequently arrested for driving while under the influence of alcohol or drugs in violation of General Statutes § 14-227a. Laterra transported the plaintiff to the police station, where the plaintiff consented to performing an intoximeter test. The first test indicated that the plaintiff had a blood alcohol level of 0.268 percent. Approximately one-half hour later, a second test was performed. The police officer's written report states that "after approx. thirty minutes the second test was administered at approx. 0246 HRS and the accused failed to blow sufficient breath into the tube, as he continued to do so he was advised that if this continued it would constitute a refusal, but he would not cooperate." A second police officer signed the arresting officer's report as a witness to the refusal.

A written report of the arrest and test refusal was forwarded to the department of motor vehicles in accordance with § 14-227b (c), and the plaintiff was notified that his operator's license was suspended for a period of six months because he refused to submit to the intoximeter test. The plaintiff requested an administrative hearing to contest the suspension.

At the hearing, the plaintiff testified, and the police officer's report and narrative supplement were admitted

placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. . . .

"(g) If, after such hearing, the commissioner . . . does not find on any one of the said issues in the negative or if such person fails to appear at such hearing, the commissioner shall affirm the suspension . . . .

into evidence. The report lists the results of the two tests as "0.268" and "insuff." The hearing officer found that the mandates of § 14-227b were satisfied and ordered that the plaintiff's license to operate a motor vehicle be suspended for six months.

Pursuant to General Statutes § 4-183, the plaintiff appealed to the Superior Court, which affirmed the decision of the commissioner. The trial court held that "[it] was the hearing officer's task, not the court's, to balance the police officer's report against the testimony of the plaintiff and determine which deserved the greater weight. As noted, the report stated the police officers' observation that the plaintiff failed to cooperate in taking the second test. Such passive conduct may constitute a refusal under the statute. See *State* v. *Corbeil*, 41 Conn. App. 7, 19, 674 A.2d 454, cert. granted, 237 Conn. 919, 676 A.2d 1374 (1996) (appeal dismissed on death of defendant). In the final decision, the hearing officer explicitly held that the police report supported the finding that the plaintiff refused to submit to the second test."

On appeal to this court, the plaintiff claims that the trial court improperly concluded that there was substantial evidence in the record to support the commissioner's finding that the defendant refused to submit to the intoximeter test. We do not agree.

Our standard of review as to the weight of the evidence on questions of fact found by an administrative agency is well defined. "[U]nder General Statutes § 4-183 (j) (5), a reviewing court cannot 'substitute its judgment for that of the [administrative] agency as to the weight of the evidence on questions of fact' unless the court finds, inter alia, that the administrative findings of fact are 'clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record' before the administrative agency." *Dept. of Public Safety* v. *Freedom of Information Commission*, 242 Conn. 79, 83, 698 A.2d 803 (1997). "Substantial evidence

exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . *Labenski* v. *Goldberg*, 33 Conn. App. 727, 732–33, 638 A.2d 614 (1994). If the commissioner's determination to suspend the plaintiff's license is supported by substantial evidence in the record, that determination must be sustained. *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 507, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994)." (Internal quotation marks omitted.) *Paquette* v. *Hadley*, 45 Conn. App. 577, 582, 697 A.2d 691 (1997). "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act . . . and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . . *Board of Education* v. *Freedom of Information Commission*, 208 Conn. 442, 452, 545 A.2d 1064 (1988)." (Internal quotation marks omitted.) *Joyell* v. *Commissioner of Education*, 45 Conn. App. 476, 488–89, 696 A.2d 1039, cert. denied, 243 Conn. 910, 701 A.2d 330 (1997).

In the present case, the administrative record adequately demonstrates a substantial basis of fact from which the plaintiff's refusal to blow sufficient breath into the machine can be reasonably inferred. After hearing testimony from the plaintiff and reviewing the police report and the arresting officer's supplemental report containing a narrative of the events, the commissioner found that the plaintiff refused to submit to the intoximeter test. The commissioner, in his subordinate findings, stated: "[N]o evidence presented by respondent as to physical inability to complete breath tests. Police report supports finding of refusal."

The police report reveals several supporting facts for a finding of refusal: the analytical device was certified, operated by a certified operator and checked for accuracy in accordance with state regulations; the plaintiff

failed the first intoximeter test because his blood alcohol count was 0.268 percent; the result of the second test taken approximately one-half hour later was "insuff.";[2] and a second officer witnessed the refusal of the second test. The police officer also stated in his supplemental report that the plaintiff "failed to blow sufficient breath into the tube [and that] as he continued to do so he was advised that if this continued it would constitute a refusal, but he would not cooperate."

The plaintiff argues that this court's decision in *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 692 A.2d 834 (1997), compels the conclusion that the evidence was insufficient to support the commissioner's finding that he 'refused' to submit to the intoximeter test. In *Bialowas*, a police officer stopped the plaintiff because he was speeding and driving in an erratic manner. The officer placed the plaintiff under arrest for operating a motor vehicle while under the influence of alcohol. The officer transported the plaintiff to the police headquarters, where the officer attempted to administer an intoximeter test three times. The officer concluded that the plaintiff failed to give a sufficient breath sample on three separate occasions, which constituted a refusal of the test. Consequently, the commissioner suspended his license and the trial court dismissed the plaintiff's appeal. On appeal, this court reversed that decision, stating that "where it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to provide an adequate breath sample does not automatically constitute refusal within the meaning of § 14-227b. Such refusal must be supported by substantial evidence. A conclusory statement by the arresting officer that the driver has failed to provide an adequate breath sample and

[2] Although the intoximeter result slip was not introduced into evidence, the police report, which contains the clear and unambiguous results of the tests, was introduced into evidence.

has, therefore, refused, does not constitute such evidence." Id., 714–15.

The fact that most distinguishes the present case from *Bialowas* is that unlike in *Bialowas* where the test was inconclusive three times,[3] the plaintiff provided sufficient breath in the first test to fail by more than twice the legal limit. See footnote 1. This indicates that the intoximeter was functioning and that the plaintiff was able to provide sufficient breath. In addition, the fact that the plaintiff had provided sufficient breath for the first test served as a basis for the police officer's comparison of the plaintiff's effort on the second test. Moreover, in *Bialowas*, the plaintiff was not told that he was failing to blow hard enough, nor did the officer warn the plaintiff that his continued failure to do so would constitute a refusal. In the present case, the officer warned the plaintiff that his continued failure to blow sufficient breath "would constitute a refusal."

In *Bialowas*, the arresting officer's narrative stated that "the plaintiff 'was very uncooperative and would not sign any necessary papers.' " *Bialowas* v. *Commissioner of Motor Vehicles*, supra, 44 Conn. App. 715.

---

[3] In the police report in *Bialowas*, the arresting officer listed the result of the first test as "aborted." The arresting officer, in the section of the police report marked "Second intoximeter test," left the time and result sections blank and filled in, and then crossed out, the date. The officer provided an intoximeter test result tape, attached to the police report, which showed the following:

| "Test | Value | Time |
|---|---|---|
| BLK | .000 | 02:47 |
| EXTSTD | .096 | 02:48 |
| BLK | .000 | 02:49 |
| STD | .098 | 02:49 |
| BLK | .000 | 02:50 |
| INSUFF. BREATH" | | |

*Bialowas* v. *Commissioner of Motor Vehicles*, supra, 44 Conn. App. 714 n.11. Unlike in the present case, the arresting officer's report created confusion and uncertainty as to the results of the tests and the cause of their inconclusiveness.

The "hearing officer made subordinate findings that the plaintiff's 'conduct was properly deemed a refusal by the police officer, as his failure to sign the temporary license and other documents supports a lack of cooperation.' " Id., 707. This court stated that "an overall failure to cooperate, without additional details, cannot be generalized to show a lack of cooperation in a specific respect and, in fact, appears to relate to his refusal to sign the temporary license." Id., 715. In the present case, however, the arresting officer observed and noted that the plaintiff would not cooperate specifically with respect to providing sufficient breath for the second test. Unlike in *Bialowas*, here there is no confusion as to the plaintiff's lack of cooperation.

In addition, in *Bialowas*, the plaintiff claimed that "there was no indication that the testing device was properly checked for accuracy nor was there any indication that the officer who attempted to administer the tests was certified to operate the machine"; id., 714; because the officer failed to check the appropriate box in the police report. In the present case, however, the arresting officer checked that box and successfully administered the first test. Therefore, it is reasonable to believe that the testing device was in proper working condition and was accurate. As a result, we conclude that *Bialowas* is distinguishable from the present case.

We cannot conclude that the commissioner's findings of fact were clearly erroneous because there was a sufficient factual basis to support the police officer's conclusion that the plaintiff refused to blow sufficient breath and substantial evidence from which the plaintiff's refusal to submit to the intoximeter test could be inferred.

The judgment is affirmed.

In this opinion the other judges concurred.