[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff appeals from a decision of the defendant Commissioner of the State of Connecticut Department of Motor Vehicles ("DMV") suspending his motor vehicle operator's license for a period of six months. The basis of the suspension is the finding that the plaintiff refused to submit to blood alcohol testing in violation of Connecticut's Implied Consent Law, General Statutes § 14-227b.
The plaintiff, Roger Ludwig, who is aggrieved by this decision, brings this appeal pursuant to the Uniform Administrative Procedures Act ("UAPA"), § 4-166, et seq.,4-183.
The incident underlying the case arose on January 28, 1997. The Westport, Connecticut police were contacted by the CT Page 6184 Westchester Police Department to locate the plaintiff Roger Ludwig, who was believed to have been involved in a hit and run accident in the Westchester jurisdiction. The plaintiff was reported to be operating a late model green Ford Explorer with damage to its right rear, including gray paint transfer.
A Westport officer, while at the intersection of Wild Rose and Main Street observed a green Ford Explorer traveling northbound at a high rate of speed. Several officers initiated a motor vehicle stop of the green Ford Explorer as it was turning onto Wild Rose Road from Main Street. The vehicle exhibited a fresh, deep gray scratch on the right rear panel.
The officers approached the vehicle on the driver's side and asked the plaintiff to roll down his window. The plaintiff opened his door instead and almost fell out of the vehicle. The officers had to assist him back into the vehicle. The plaintiff exhibited a strong odor of alcohol. The officers asked Ludwig to emerge from the vehicle and perform standardized field sobriety tests. Ludwig could not maintain his balance and had to support himself on his vehicle to prevent himself from falling. Ludwig performed poorly on three field sobriety tests. He was arrested for operating under the influence and transported to Westport police headquarters for processing. Ludwig was advised of his "Miranda" rights and read the implied consent advisory form. He indicated that he understood these rights and signed forms indicating such understanding. The police officers requested that he submit to a breath test, but Ludwig indicated that he wished to be given a blood test. Ludwig was afforded the opportunity to contact an attorney, but declined to complete the call. Ludwig agreed to submit to a breath test. The police report indicates that the following took place in the administration of the breath test:
 "Ludwig stated that he would submit to the breath test. I gave Ludwig directions that he had to continuously blow into the testing tube until he was told to stop. Ludwig was given the directions twice, upon administering the first test Ludwig would blow into the tube for a second then inhale what he had blown into the tube, he continually did this until the first test aborted showing "invalid test". Ludwig was advised that he would have to repeat the test, at which point he became agitated and stated that he now wanted to speak to his attorney.
Ludwig was again given a chance to contact his attorney, this CT Page 6185 time not being able to get in touch with him. When asked if he was going to submit to the test a second time, Ludwig stated no because he had already taken the test, when advised that it would be considered a refusal Ludwig once again agreed to submit to the test. Once again Ludwig was given directions to keep blowing into the testing tube until advised to stop. Upon asking Ludwig to blow into the testing tube for the second test he once again started to blow into the tube for one second and stop. I told him that he had to breathe into the tube once again blowing a steady flow of air. This time he took a deep breath, put his mouth around the tube and placed his tongue on the intake tube and blew up his cheeks as if he was blowing into the tube. Once again not giving the Intoxilyzer 5000 an ample sample. The test once again aborted, this time being considered a refusal." (Ex. A.)
Ludwig subsequently refused to sign his appearance bond, temporary license or property form. However, at 4:00 a.m. he signed the forms and was released. The police officers noted that "Ludwig's attitude was very poor and uncooperative from the initial stop right up to the point when he was released." Ludwig's performance during the breath test and refusal to complete such test was witnessed by at least two Westport police officers.
A video tape of the booking of Mr. Ludwig and his breath test was made by the Westport police department.
The DMV held a hearing on the issue of Mr. Ludwig's suspension on February 25, 1997. The plaintiff appeared with counsel and testified at his hearing. The plaintiff testified of a medical condition, asthma and severe blockage of nasal passages, which would interfere with the breath test. The plaintiff also entered into evidence a report from a physician describing his medical condition. The police report indicates that at the time of his arrest he reported no illness, injury or medication. Mr. Ludwig also testified that the breathalyzer machine was not working properly and that the officers consulted the Weston police department concerning the machine. Ludwig testified that he followed instructions and took the breath test. Also testifying at the hearing was Officer Koskinas, the arresting officer, who also brought with him the videotape of Mr. Ludwig's booking and testing process. Officer Koskinas' testimony was consistent with the A-44 report. (Ex. A.) CT Page 6186
A portion of the video was shown to the hearing officer at the hearing. The video showed Mr. Ludwig's back as he was performing the breathalyzer test and revealed the presence of two Westport police officers. The video, though viewed at the hearing was not marked as an exhibit. The video was retained by the Westport police department in connection with the criminal prosecution of Mr. Ludwig. Following the resolution of the criminal case the video was destroyed. (Court Exhibit 1). The plaintiff in his appeal raises two issues. One, the sufficiency of the evidence to support the conclusion that he refused to be tested. The second issue relates to the absence of the video from the record.
The plaintiff bears the burden of proving that the DMV decision to suspend his motor vehicle operator's license was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Schallenkamp v.DelPonte, 229 Conn. 31, 39 (1994), see Lawrence v. Kozlowski,171 Conn. 705, 713-14 (1976), cert. denied, 431 U.S. 969,97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977). "Judicial review of an administrative agency decision requires the court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from these facts are reasonable . . . substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact and issue can be reasonably inferred . . . the evidence must be substantial enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury . . . if the administrative record provides the substantial evidence upon which the hearing officer could reasonably have based his findings . . . the decision must be upheld." (citations omitted; internal quotation marks omitted)Bialowas v. Commissioner of Motor Vehicles, 44 Conn. App. 702,709 (1997). "`Refusing' to take a breath test may be accomplished by a failure to cooperate as well as by an expressed refusal."State v. Corbeil, 41 Conn. App. 7, 19 (1996) cert. granted on other grounds and appealed dismissed, 237 Conn. 919. In Bialowasv. Commissioner of Motor Vehicles, supra, the Appellate Court ruled: "We hold that where it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to provide an adequate breath sample does not automatically constitute a refusal within the meaning of § 14-227b. Such refusal must be supported by substantial evidence." Bialowas v.
CT Page 6187Commissioner of Motor Vehicles, supra 44 Conn. App. at 714-15.
In Ellam v. Commissioner of Motor Vehicles, 47 Conn. App. 509
(1998), a refusal was found and Bialowas was distinguished based on the A44 testing device certification, observation of a failure to blow sufficient breath for a second test and a warning.
The observations in this case exceed those in the Ellam
decision and the officer similarly confirmed the proper functioning of the testing device especially with respect to the second test which Mr. Ludwig refused to cooperate with by putting his tongue over the tube. As in Ellam, Mr. Ludwig was warned about the failure to cooperate constituting a refusal.
The evidence of the repeated instructions, refusal to follow simple instructions, certification of the testing device and its operator, partial testing read out and continued uncooperative attitude were substantial evidence upon which the hearing officer could rely in finding a refusal.
The defendant filed the record on June 5, 1997. On March 3, 1998, the plaintiff filed a motion to add the video tape to the record. It is undisputed that the video was erased by the Westport police department as part of its routine procedures after the conclusion of a criminal prosecution that the video was erased. Following the oral argument on the appeal, the court on February 16, 1999 afforded the parties until March 2, 1999 to file memorandums on the issue of the consequence of the destruction of the subpoenaed video tape.
The transcript reveals that the videotape was never entered into the record as an exhibit in the administrative hearing. A portion of the video was viewed. The plaintiff also waited nearly nine months from the filing of the record on June 5, 1997 to move to add the videotape to the record.
The plaintiff relies on the authority in criminal cases involving the intentional routine destruction of audio taped witness statements; State v. Williamson, 212 Conn. 6 (1989), Statev. Kelly, 208 Conn. 365 (1988); State v Santangelo, 205 Conn. 578
(1987); State v. Mullings, 202 Conn. 1 (1987); State v. Myers,193 Conn. 457 (1984); State v. Shaw, 185 Conn. 372 (1981) cert. denied 454 U.S. 1155 and State v. Simms, 12 Conn. App. 239, (1987), cert. denied, 206 Conn. 801 (1988). All these cases are distinguishable in that they involve criminal prosecutions. Also, CT Page 6188 they consider the culpability of the police department in the destruction of evidence. Such analysis would be unhelpful to the plaintiff where he failed to introduce the videotape into the record of the administrative hearing, and waited six months to correct the record to include the videotape. In the interim between the June 5, 1997 filing of the Record in this case, and the plaintiff's March 3, 1998 motion to add the videotape to the Record; the tape was destroyed by the police department on November 7, 1997.
If the analysis of State v. Williamson were applicable to administrative proceedings by the motor vehicle department, it would be of no assistance to the plaintiff under these facts.
Plaintiff also relies on the UAPA provision that the agency provide the court the "entire record" (§ 4-183(g)). In failing to mark the tape as an exhibit, the plaintiff failed to make it part of the Record.
Assuming the tape was admitted into evidence and viewing it in a light most favorable to the plaintiff, the refusal finding is still supported by substantial evidence. Officer Koskinas, at the hearing following the presentation of a portion of the video, testified to the refusal by conduct of Mr. Ludwig. Such testimony would alone constitute sufficient substantial evidence of the refusal.
The decision suspending the plaintiff's motor vehicle operator's license is affirmed and the appeal is dismissed.
Robert F. McWeeny, J