[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Charles B. Dore, appeals the October 16, 1998 decision of the defendant Commissioner of the Department of Motor Vehicles ("DMV"), which suspended the plaintiff's motor vehicle operator's license for a period of one year. The DMV acted pursuant to General Statutes § 14-227b on the basis that the plaintiff had refused a chemical test of the alcohol content of his blood after having been arrested on a charge of operating a motor vehicle while under the influence of alcohol. The plaintiff, who is aggrieved, brings this appeal pursuant to General Statutes § 4-183 and advances an infrequently encountered argument in support thereof.
Under General Statutes § 14-227b(d) a person whose license has been suspended is entitled to a hearing prior to the effective date of the suspension. In this case, this hearing was conducted on October 15, 1998, before Attorney Brian Carey, who presided as hearing officer. The evidence at the hearing consisted of the Form A-44,[1] with an attached three page narrative supplement and test strip. In addition, the plaintiff, who was represented by counsel, testified at the hearing and presented other evidence.
The evidence introduced at the hearing established that on July 24, 1998, at approximately 9:07 p. m., Officer Peter Bosco, Naugatuck, Connecticut, Police Department, was on patrol northbound on Route 8. Officer Bosco observed a motor vehicle also traveling northbound on Route 8 weaving in and out of the established slow lane into the fast lane and almost striking another vehicle which was attempting to pass. The officer observed the subject vehicle, a blue four door Ford Tempo, make a hard right at the exit 29 off ramp and strike a partial median located on the left side of the off ramp. The vehicle's driver side front and rear tires passed over the partial median as the vehicle continued to travel on the exit ramp. At that time, CT Page 6685 Officer Bosco pulled the vehicle over. The driver of the vehicle was subsequently identified as the plaintiff, Charles Dore.
While speaking with the plaintiff the officer noticed that Dore's eyes were extremely glossy and blood shot. When asked for his driver's license, registration and insurance card, Dore responded "What the hell did I do wrong?" At that time, Officer Bosco detected a strong odor of an alcoholic beverage coming from Dore's breath and that Dore was slurring his speech. The officer explained to Dore that he had observed Dore swerving on Route 8 and also hit the median at the bottom of the exit ramp, to which Dore responded "Well, don't you think that's a stupid place to put a median." The officer again asked Dore to retrieve his driver's license, registration and insurance card, at which point Dore began fumbling around in the glove compartment. While looking for these materials, Dore lost his balance and fell face first into the passenger seat. The officer asked Dore if he was alright to which Dore responded "Yeah, I have been working all day and I'm tired." The plaintiff finally retrieved his registration and insurance card and turned those over to the officer. The plaintiff volunteered that he had been arrested for DWI a few months earlier and that DMV had lost his license. The officer asked Dore if he had been drinking any alcoholic beverages and Dore responded "I had a few beers." Officer Bosco called for back up and asked the plaintiff to step from his vehicle to perform field sobriety tests.
At that time another officer arrived at the scene. Officer Bosco asked Dore if he had any illnesses, medical problems or handicaps that would prevent him from performing the field sobriety test. Dore responded "No, I should be all set." Prior to being asked to perform each test, each test was explained and demonstrated for the plaintiff. The tests administered were the horizontal gaze nystagmus, the walk and turn, and the one leg stand. Dore failed each test.
The plaintiff was taken into custody and transported to the Naugatuck police station. There, the plaintiff was read his constitutional rights and signed a waiver form. The plaintiff stated that he was not a diabetic and he did not take insulin. Dore then stated that he had begun drinking at approximately 3:00 p. m. and had continued until approximately 8:00 p. m. When asked what type of alcoholic beverages he had been drinking, the plaintiff stated "Whatever they put in front of me." The plaintiff then stated that he remembered at least six beers. CT Page 6686
The plaintiff was afforded the opportunity to contact an attorney, which he refused. The plaintiff then read the implied consent advisory on the A-44 form and stated that he understood it. The plaintiff then stated "You know I'm going to refuse whatever test you ask, I beat it last time by refusing, I'll beat it again." Dore also stated "If you (the police) could write a good report the first time you wouldn't have had to worry about me driving on the streets." According to the police report, Dore was referring to an earlier arrest for DWI by another police department in which he had had his license reinstated.
The plaintiff was then asked to provide a breath sample on the intoxilyzer 5000. Dore stated "I am not going to blow you're wasting your time." In fact, Dore did refuse the test which was witnessed by Sergeant Raymond Savoy. According to the A-44 form prepared by Officer Bosco, Dore stated that he was not injured, not ill, not a diabetic, not taking insulin, not taking medication, and not in need of medication at that time.
In addition to testifying at the administrative hearing in this matter, the plaintiff offered medical records and exhibits, and a letter from Dr. James O'Brien to show that it would have been medically inadvisable for him to take the breath test. Dr. O'Brien's letter conflicted with Officer Bosco's report on the underlying facts. Included within Dr. O'Brien's two page letter dated October 8, 1998. was the following: "It is my understanding that on July 24th Mr. Dore was suffering an asthmatic attack and because of shortness of breath and wheezing, he pulled to the side of the road. . . . Mr. Dore explained that because of his medical problems he could not perform the [standard field sobriety tests]. . . . Mr. Dore, who was experiencing severe shortness of breath in part due to transporting dirt prior to the stop, refused to take the Breathalyzer test. Mr. Dore . . . states he had three 12 ounce beers . . ." (Return of Record (ROR) Respondent's Ex. 1).
After receiving and listening to all of the evidence, the hearing officer upheld the plaintiff's suspension which was for one year as a repeat offender. This administrative appeal to this court followed.
The issue presented in this administrative appeal, on which there is a paucity of authority, is whether General Statutes § 14-227b applied to the plaintiff because of § 14-227b(j), which CT Page 6687 provides: "The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable." Indeed, the parties have submitted no reported decisions interpreting General Statutes § 14-227b(j) and no unreported decisions where a plaintiff has introduced a letter from a physician stating that it was medically inadvisable for the plaintiff to submit to a breath test.
Under General Statutes § 14-227b(f), the hearing conducted before the hearing officer was limited to a determination of the following four issues: (1) did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the motor vehicle. In this type of an administrative appeal, the plaintiff bears the burden of proving that the DMV decision to suspend his motor vehicle operator's license was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Schallenkamp v. DelPonte, 229 Conn. 31, 39 (1994); see also Lawrence v. Kozlowski, 171 Conn. 705, 713-14 (1976), cert. denied, 431 U.S. 969 (1977).
Here, the plaintiff contends that the provisions of General Statutes § 14-227b do not apply to him because of § 14-227b(j), which provides that those provisions do not apply to a person "whose physical condition is such that, according to competent medical advice, such test would be inadvisable." The plaintiff contends that because of the records and letter from Dr. O'Brien, § 14-227b(j) requires DMV's suspension order to be set aside.
Only one unreported superior court decision discusses General Statutes § 14-227b(j). In Bennett v. Commissioner, MotorVehicles, Superior Court, judicial district of Hartford/New Britain at Hartford, docket no. CV94 0705079 (March 24, 1995, Maloney, J.), the plaintiff argued, based on General Statutes § 14-227b(j), that the hearing officer's finding of a refusal was improper because the evidence showed that the police did not permit the plaintiff to call his doctor before submitting to the test. In Bennett, the plaintiff testified at the administrative hearing that he suffered from cardiac arrhythmia that is aggravated by stress. He complained of the onset of symptoms CT Page 6688 after his arrest and the police officer took him to the emergency room where he was examined and released. The police then took him to headquarters and requested that he take a breath test. The plaintiff refused to submit to the test unless he first contacted his cardiologist. The police deemed this a refusal and the hearing officer affirmed the suspension.
The court in Bennett dismissed the plaintiff's appeal. The court found that § 14-227b(j) did not support the plaintiff's argument, because there is nothing in § 14-227b(j) that expressly requires the police to provide one an opportunity to speak to a doctor before taking a breath test, and, even if § 14-227b(j) could be read to create such a right by implication, the failure of the police to comply would not expand the narrow scope of the administrative proceedings, which is limited to the four factors enumerated in § 14-227b(f). The court further stated:
 The more important reason why subsection (j) does not afford the plaintiff any support in this case is that there is no evidence in the record that his condition qualifies for the exemption. The record, including his testimony, reveals that the police took him to the hospital twice during the night of his arrest. The record also contains written statements by two of his doctors, including his cardiologist. None of these medical specialists, however, state in this record that the breath test that he refused would have been medically "inadvisable." The plaintiff has, in short, presented no evidence that he should have been excused from the obligation to take the test in accordance with subsection (j).
 In summary, subsection (j) of General Statutes § 14-227b
creates an exemption from the obligation to be tested for those whose condition makes it medically inadvisable. If the person refuses to be tested and then shows by competent evidence that it would have been medically inadvisable for hi to have submitted to the test, the commissioner may not suspend his license. That did not happen here. The plaintiff refused to be tested, but he never offered any evidence that his physical condition should have excused him from the obligation.
Id.
It appears that no other state has a provision that reads CT Page 6689 exactly like General Statutes § 14-227b(j). But, most states have enacted some form of implied consent legislation. See 7A Am Jur 2d, Automobiles and Highway Traffic, §§ 132, 366 (1997); 4 M. Bender, Defense of Drunk Driving Cases, Statutory Appendix (1999). Most states have no express statutory provision regarding physical incapability or medical inadvisability as an excuse for failing to submit to testing. The following states have statutory provisions regarding physical inability to submit to testing.
In Delaware, if a person is physically unable to supply enough breath or complete the chemical test, the person shall submit to another test as elected by the police officer. Del. Code Ann., tit. 21, § 2747. California has a similar section, which provides that if one is incapable or states that he is incapable of completing a test, the person shall submit to another test. Calif. Veh. § 23157(a)(2)(C). The Oklahoma statute provides that if a person is incapable of submitting to and successfully completing, by reason of illness or injury or other physical disability, the test to be administered, an alternate test may be administered. Okla. Stat. § 47-751.C. In the District of Columbia, the statute provides that the arresting officer chooses the test, provided that a person can object to a particular test on valid religious or medical grounds. D.C. Code Ann. § 40-502(b). In Rhode Island, it is an infraction to refuse to submit to a test, but it is a defense to a charge of refusing a validly requested preliminary breath analysis that the medical condition of a person precluded the giving of any such test R.I. Gen. Laws § 31-27-2.3(b). The Kansas statute states that a failure to provide an adequate breath sample shall constitute a refusal unless the person shows that the failure was due to a physical inability caused by a medical condition unrelated to any ingested alcohol or drugs. Kan. Stat. Ann. § 8-1001(f)(2). In Wisconsin, the applicable statute provides that a person shall not be considered to have refused the test if it is shown by a preponderance of evidence that the refusal was due to a physical inability to submit to the test due to a physical disability or disease unrelated to the use of alcohol or drugs. Wis. Stat. § 343.305(9)(a)5.c. While the Virginia statute does not specifically refer to physical inability as an excuse to submitting to testing, the. statute does allow a defendant to introduce evidence regarding the basis for refusal at the suspension hearing. Va. Code Ann. § 18.2-268.3.E.
Those states that do not have a statute regarding a person's physical inability to take a chemical test have recognized this CT Page 6690 excuse as a constitutionally inherent basis for avoiding sanctions for refusing to submit or failure to complete the testing. Annot., 68 ALR4th 776, 783 (1989). See, e.g., Hatalskiv. Commonwealth of Pennsylvania. Dept. of Transportation,666 A.2d 386, 390 (Pa.. Cmwth. 1995) (citing cases providing that when person suffers from medical condition affecting ability to perform test, and it is not obvious, person is required to inform officer so a different test may be administered, and person who does not so inform the officer is precluded from relying on the inability as a defense to a suspension for refusal.)
Most states place the burden of proof on the motorist to show a medical inability to perform a test. See, e.g., Kan. Stat. Ann. § 8-1001(f)(2); Wis. Stat. § 343.305(9)(a)5.c.; Commonwealth ofPennsylvania, Department of Transportation v. Morris,621 A.2d 1170, 1172 (Pa.Cmwlth. 1993). The wording of the Connecticut regulation, adopted by the DMV, Regs., Conn. State Agencies § 14-227b-6, places the burden on the person at the administrative hearing to submit competent medical evidence sufficient to substantiate the claim that his physical condition is such that submission to chemical analysis is medically inadvisable. Whether a person is physically unable to submit to a test is a question of fact. Burke v. Commissioner of PublicSafety, 381 N.W.2d 903, 904 (Minn.App. 1986); In the Matter ofRefusal of Kirchhuebel, Court of Appeals of Wisconsin, Case No. 98-1258 (November 12, 1998) (unpublished opinion).
In the Matter of Refusal of Kirchheubel, supra, is a very recent case from Wisconsin, which is one of the few states that has a statutory provision regarding physical inability to submit to testing similar to General Statutes § 14-227b(j). InKirchheubel, the Wisconsin Court of Appeals found that the trial court did not err in affirming the plaintiff's license suspension because the plaintiff did not establish that he was physically unable to take the test. At the refusal hearing, the arresting officer testified that he asked the plaintiff to submit to a preliminary breath test and that the plaintiff blew an insufficient amount of air for a proper sample three times. The officer testified that he believed the plaintiff was "playing a game." At the police station, the officer asked the plaintiff to submit to an Intoxilyzer test. The officer initially believed that the plaintiff had consented, but when the machine was prepared, the plaintiff stated that he would not give another breath sample because he had already given one. The officer deemed this a refusal. At the refusal hearing, the plaintiff CT Page 6691 testified that he was missing a number of lower teeth. He presented the testimony of a former Department of Transportation employee whose duties had included testing, evaluation and calibration of breath test equipment, officer training and related work. She opined, inter alia, that the plaintiff's difficulty in providing the preliminary breath test sample stemmed from the gaps in his lower teeth. The plaintiff testified that he had refused because "I had told [the officer] that I had already done this on the street and it was going to be useless to try it again." The Court of Appeals noted that the trial court's determination that the plaintiff had not met his burden of establishing a physical inability to provide a breath sample was a factual finding that it would not disturb unless it was clearly erroneous. The court further stated that a trier of fact is free to discount or disbelieve expert testimony, just as it is free to do so for the testimony of any witness.
The plaintiff in Kirchhuebel also argued that the trial court had placed improper emphasis on the fact that he had not told the officer at the time of his arrest that he was unable to provide a breath sample because of a physical inability. The plaintiff asserted that this emphasis essentially added an element to the statutory requirements, in that not only must the plaintiff prove physical inability, but he must also show that the disability was brought to the officer's attention. The Court of Appeals found no merit to this argument, stating that the trial court had noted the statutory requirements when making its findings. The Court of Appeals further observed that the trial court had found that the plaintiff's failure to tell the arresting officer of any physical inability at the time the tests were requested and failure to testify in court that he was physically unable to comply, were gaps in proof that had not been overcome by the expert's testimony. The Court of Appeals noted that the trial court had stated that it "certainly would help in his proof that he had a disability at that time, if he mentioned that he had a disability at that time."
In the present case, in addition to the required findings of fact and conclusions of law, the hearing officer made the following subordinate findings:
1. Mr. Dore refused to attempt to give a breath test.
 2. Mr. Dore further stated "You know I'm going to refuse whatever test you ask, I beat it last time by refusing, CT Page 6692 I'll beat it again."
 3. Mr. Dore was asked if he was ill, required medication or was injured and answered no to all questions. (See Section D, Interview A-44).
Additionally, according to the evidence, the plaintiff continued: "If you (the police) could write a good report the first time you wouldn't have had to worry about me driving on the streets." Having previously informed the arresting officer that he was not ill, did not require medication and was not injured, when asked to provide a breath sample, the plaintiff stated "I am not going to blow, you're wasting your time."
The foregoing evidence is diametrically opposed to the factual assumptions contained within Dr. O'Brien's letter and the other evidence presented by the plaintiff at the DMV hearing. The mere possibility of drawing two different conclusions from the evidence does not prevent an agency's determination from being supported by substantial evidence. Newtown v. Keeney,234 Conn. 312, 320 (1995), quoting Samperi v. Inland Wetlands Agency,226 Conn. 579, 587-88 (1993). Here, the DMV hearing officer was under no obligation to accept the plaintiff's explanation of events and evidence. Dr. O'Brien's opinion, contained within his letter, that it would have been "medically inadvisable for Mr. Dore to attempt to perform a Breathalyzer test" was based, at least in part, on Dr. O'Brien's assumption that Mr. Dore was suffering an asthmatic attack and because of shortness of breath and wheezing had pulled to the side of the road. Other facts contained within Dr. O'Brien's letter conflict with the evidence submitted by the arresting officer. Clearly, the hearing officer was entitled to "believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." Bancroft v. Commissioner ofMotor Vehicles, 48 Conn. App. 391, 400, cert. denied,245 Conn. 917 (1998); see also Settani v. Commissioner of Motor Vehicles,48 Conn. App. 418, cert. denied, 245 Conn. 916 (1998).
In the present case, the arresting officer's report clearly indicates that at the time of the incident, the plaintiff was asked if he had any illnesses, injuries, or was on medication, to which he responded in the negative. Rather than the statements and comments by the plaintiff outlined above, had the plaintiff, in good faith, disclosed a medical condition which would preclude his taking a breath test, another test could have been selected by the arresting officer. The plaintiff's statements at the time CT Page 6693 of the incident showed no such good faith. The administrative record contains substantial evidence on which the hearing officer could reasonably have based his findings. Bialowas v.Commissioner of Motor Vehicles, 44 Conn. App. 702, 709 (1997).
Based on all of the foregoing, the decision of the DMV to suspend the plaintiff's Connecticut operator's license for one year will not be disturbed. The plaintiffs administrative appeal from the DMV order is, therefore, dismissed.
Michael Hartmere, Judge