[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 4187
 I. Procedural Background
The plaintiff, Gregory Keogh ("Keogh"), appeals from the final decision of the defendant, commissioner of motor vehicles ("commissioner"), suspending Keogh's motor vehicle operator's license for a period of six months. The commissioner acted pursuant to General Statutes § 14-227b on the basis that Keogh refused to submit to a chemical test of the alcohol content of his blood after having been arrested on a charge of driving while under the influence of alcohol. Keogh appeals pursuant to General Statutes § 4-183. The court finds the issues in favor of the commissioner.
The record reflects the following facts. On October 2, 1999, Trooper Kick, assigned to Troop G (Bridgeport), State Police, was dispatched to Route 7 after several reports of a red pickup truck operating erratically. While on this assignment, Trooper Kick was radioed that there was a red truck stopped on an exit ramp from Route 15 northbound and that a man was lying on the ground face down near the truck. Trooper Kick arrived at 1:50 p. m. at the scene to find the truck running and a man, later identified as Keogh, stumbling about near the truck. He had dilated pupils, bloodshot eyes, slurred speech and the strong smell of alcohol about him. He appeared non-responsive when asked by Trooper Kick to stop his wandering about and sit on the ground. To the question of whether he had been drinking, Keogh replied that he had had a few beers at work. Keogh also stated that he had been driving the truck without any passengers. When Trooper Guiterrez arrived just a few minutes later, Keogh stated that he had been drinking vodka.
Because Keogh had a wound on his temple, Trooper Kick summoned paramedics from Norwalk Hospital to examine the injury. Keogh stated that he had injured his head while at work that morning. The injury appeared to be slight and healing. At this point, Keogh agreed to take field sobriety tests, and was helped to his feet as he could not rise on his own. He did not pass the usual tests and could not remain on his feet without assistance. CT Page 4188
Keogh was then arrested and brought to the Troop G barracks. During all this time period, Trooper Kick noted in his report that Keogh "stared . . . blankly without moving saying, "just tell me what I did."' (Return of Record ("ROR"), Item 4, State's Exhibit A.) He repeatedly asked why he was under arrest, at one point raising his voice and at another breaking down. At the barracks, Keogh was asked to take a chemical test of the alcohol content of his blood ("breath test") and Keogh gave his consent.
When the testing device was ready, Keogh refused to proceed, stating he wanted to take the test "later." (ROR, Item 4, State's Exhibit A.) When told to return to take a seat in the testing room, Keogh vocally protested stating that he did now want to take the test. Trooper Kick did not permit Keogh to take the test again at this point, but did allow him to take the test about twenty minutes later. At that point, he again refused to approach the machine and became out of control as witnessed by both Trooper Kick and Trooper Wilson. No further attempt at testing was made and Keogh was further processed, placed in a cell, and immediately fell asleep.
On October 27, 1999, the commissioner sent Keogh a notice of suspension which allowed for a hearing on November 10, 1999. At the hearing, Keogh appeared with counsel. The hearing officer entered into evidence the A-44 with attachments without objection. Keogh was the only witness and he stated that he had no memory of the entire incident. On the same day as the hearing, the hearing officer issued a decision suspending Keogh's license for six months.
In the decision of the hearing officer, in addition to the four requisite findings under General Statutes § 14-227b(g), the hearing officer included the following subordinate finding: "In light of the respondent's admitted inability to remember anything that happened, the police report is factually uncontroverted and provides substantial evidence to support an affirmative finding on all four issues." (ROR, Item 5, Certified Copy of the Decision.)
 II. The Hearing Officer's Findings Are Supported by Substantial Evidence
Keogh raises three claims of error in this appeal:
1. The hearing officer's finding that he refused to submit to CT Page 4189 a breath test was clearly erroneous in light of the substantial evidence in the whole record;
 2. The hearing officer's finding that Trooper Kick had probable cause to arrest him was clearly erroneous in light of the substantial evidence in the whole record; and
 3. The hearing officer should have found evidence in the record that it was unreasonable to offer Keogh the breath test.
Turning to the first issue, the hearing officer concluded that Keogh had "refused to submit to such test or analysis." (ROR, Item 5, Certified Copy of Decision.); see also General Statutes § 14-227b(g)(3). The Appellate Court has held that "passive conduct" may constitute a refusal under this statute. Ellam v.Commissioner of Motor Vehicles, 47 Conn. App. 509, 512 (1998),citing State v. Corbeil, 41 Conn. App. 7, cert. granted on other grounds, 237 Conn. 919 (1996) (appeal dismissed upon death of defendant). Whether such conduct "constituted a refusal to submit to the breath test presents a question of fact . . . and, therefore, our review is limited to determining whether the hearing officer's finding was supported by substantial evidence (Citations omitted.) Altschul v. Salinas, 53 Conn. App. 391, 397
(1999).
Keogh points out that immediately after refusing to take the initial test, by asking to take it later, he changed his mind and demanded to take the test then and there. Keogh notes that even when he changed his mind, Trooper Kick told him to sit down. The conclusion drawn by Keogh from this incident is that Cusano v.Commissioner of Motor Vehicles, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 558781 (October 29, 1996, Maloney, J.) (18 Conn. L.Rptr. 134) applies. In that case, the police officer, perhaps out of bad feelings toward the accused, refused to allow the retaking of the test, even though the accused immediately changed her mind and asked to take the test after a refusal. The court held such a situation did not to amount to a refusal. Keogh goes on to argue further that the record shows that he became upset and flustered after this incident and that explains why the second test ended as it did in another refusal.
The record here does not reveal a Cusano situation. It is true that Trooper Kick refused to allow Keogh to take the test CT Page 4190 immediately after his refusal. If Trooper Kick had continued to deny a second opportunity to Keogh, the case would be more analogous. But here, Keogh was given another chance twenty minutes later to take the test again and he refused. The hearing officer could have concluded that the troopers had afforded sufficient opportunity to Keogh to determine what he wanted to do, as he fluctuated between violence and cooperation. This was hardly the four-minute mind change seen in Cusano. As to this issue, the court finds that the hearing officer's conclusion is supported by substantial evidence in the record. Altschul v.Salinas, supra, 53 Conn. App. 397; Schallenkamp v. Delponte,229 Conn. 31, 39 (1994).
The second issue raised by Keogh is that of the requirement of § 14-227b(g)(1) that there be probable cause that he was operating his truck while intoxicated. Keogh relies on the case of Murphy v. Commissioner of Motor Vehicles, 54 Conn. App. 127, cert. granted 251 Conn. 904 (1999) to argue that when the trooper arrived on the scene, Keogh was outside the truck and there was no specific evidence that he was intoxicated while driving. InMurphy, the operator had allowed her automobile to slip down an embankment into a river and later the police arrived on the scene. At the time the police arrived, the automobile had been removed from the river, several hours had passed from the time of the incident, and the operator admitted drinking as much as five hours before. The Appellate Court concluded over a strong dissent that there was "no evidence of a temporal nexus between liquor and operation" for the hearing officer to rely upon. Murphy v.Commissioner of Motor Vehicles, supra, 132
Murphy is readily distinguished. The record shows that the police officer located Keogh after several telephone calls reported erratic operation of a red truck in the Route 7 vicinity. The trooper found Keogh stumbling outside a vehicle with the engine running. He was observed to be disoriented and confused. He had blood shot eyes, dilated pupils, slurred speech and a strong odor of alcohol on his breath. He told the trooper that he alone had been driving the truck and that he had been drinking vodka and beers, starting at work that day.
The hearing officer could have found substantial evidence that Keogh's debilitated state and close proximity to a truck in full operation was consistent with his being under the influence at the time he was operating a motor vehicle. This would justify the hearing officer's conclusion that there was probable cause. As CT Page 4191 Judge Hartmere recently stated in distinguishing Murphy:
"Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." Grizzle v. Salinas, Superior Court, judicial district of New Britain, Docket No. 494410 (September 15, 1999, Hartmere, J.), citing Costello v. Kozlowski,47 Conn. App. 111, 115 (1997); see also Kirei v. Hadley, 47 Conn. App. 451
(1998) (where the apparent driver of the automobile was found walking some distance away from where his vehicle was stuck in a snowbank). In finding substantial evidence, the Appellate Court in Kirei v. Hadley, supra declared: "Thus, it was within the hearing officer's province to determine whether he believed the plaintiffs testimony regarding when the plaintiff consumed liquor in relation to the time of operating his motor vehicle" or to believe the police reports on when the motorist was operating the automobile while intoxicated. Id., 457.
Keogh's final argument is that he was so disabled at the time that Trooper Kick asked him to take a breath test that this amounted to an unreasonable action on the trooper's part, so that a refusal cannot be found. There is precedent that inability to take the test for physical reasons might lead to a finding by the hearing officer that a refusal did not occur. Dore v. Salinas,
Superior Court, judicial district of New Britain, Docket No. 492730 (May 18, 1999, Hartmere, J.) (24 Conn. L. Rptr. 584), appealed on May 28, 1999. Here, Keogh presented no such evidence. Rather as the hearing officer stated, Keogh could not remember any events of that night. The hearing officer could have found substantial evidence that Keogh's intoxicated condition alone contributed to his refusal. Therefore, the troopers' actions were not unreasonable.
To the degree that Keogh argues that there were other less demanding tests available, and that Trooper Kick should have selected another test, such an issue may not be raised in license suspension hearings. Buckley v. Muzio, 200 Conn. 1, 7 (1986);Volck v. Muzio, 204 Conn. 507, 511-12 (1987).[1]
For the reasons set forth above, the plaintiffs appeal is hereby dismissed and the commission's decision is affirmed.
Henry S. Cohn, Judge