## STATE OF CONNECTICUT *v.* MAURICE CORBEIL
### (13990)

Foti, Heiman and Hennessy, Js.

Argued January 23—officially released April 9, 1996

*Todd A. Edgington,* assistant public defender, for the appellant (defendant).

*Ronald G. Weller,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Edward Wilson,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle on a public highway while under the influence of intoxicating liquor or any drug or both in violation of General Statutes § 14-227a (a) (1).[1] The defendant claims that the judgment should be reversed because the trial court improperly (1) permitted into evidence statements made by the defendant after he had been given *Miranda*[2] warnings while excluding statements made by the defendant before he had been given those warnings, and (2) concluded that the defendant had knowingly, voluntarily and intelligently

---

[1] General Statutes § 14-227a (a) (1) provides in pertinent part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both . . . ."

[2] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

waived his fifth amendment right to remain silent. The defendant also claims that General Statutes § 14-227a (f) is unconstitutionally vague as it applies to the facts of this case. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On February 19, 1993, at approximately 12:55 a.m., the defendant was driving a pickup truck on a public highway in Manchester. As he approached the entrance ramp of Interstate Route 384, he traveled at a noticeably slow speed. The speed of the defendant's vehicle then fluctuated between forty and fifty miles per hour, and the vehicle began swerving between lanes, from right to center to breakdown lane. The truck also had its right turn signal on. Robert Leduc, a Manchester police officer, observed this erratic driving and activated his strobe and flashing lights to stop the defendant. The defendant did not respond to the lights or to the police vehicle's siren. The defendant, upon exiting the highway, brought his vehicle to a stop. Leduc approached the defendant after notifying the dispatcher by radio of his location. The officer also activated an audio-video camera that was attached to his cruiser.

Leduc asked the defendant for his license. The defendant's eyes were glassy, he had an odor of beer or liquor on his breath and his motions were awkward. Leduc asked the defendant to exit his vehicle to have sobriety tests administered. Upon getting out of the truck, the defendant had the front of his trousers open and appeared to have urinated in his pants. The officer also observed that the defendant slurred his speech and swayed when he walked.

The officer administered a variety of sobriety tests to the defendant. The defendant could not stand on one leg with his arms by his side for thirty seconds, nor could he walk nine straight steps, heel-to-toe with arms straight out. The defendant failed to perform a finger-

to-nose test that requires a person to tilt his head back with his eyes shut and to touch his finger to his nose a number of times. The defendant also could not satisfactorily perform, to the officer's observation, a horizontal gaze nystagmus test. At this point, the defendant was placed under arrest and transported to the police station.

I

The defendant first argues that statements he made at the police station, after he was advised of his *Miranda* rights, should have been excluded from evidence under the derivative evidence doctrine. He claims his rights to due process and against self-incrimination pursuant to article first, § 8, of our state constitution[3] were violated.

The facts relative to this claim are as follows. At the scene of the stop, the defendant stated that he had consumed four beers at the Cactus Club between 6:30 p.m. and 12:30 a.m. This remark was made subsequent to Leduc's comments to the defendant that "You're going to jail, I think" and "You're cocked." During the administering of the sobriety tests, Leduc questioned the defendant about his activities earlier in the evening. The trial court suppressed the defendant's statements, finding that the officer's comments were the functional equivalent to a formal arrest and, therefore, Leduc's questions constituted custodial interrogation.

Thereafter, the defendant was transported to the police station and advised of his *Miranda* rights.[4] In response to Leduc's continued questioning, the defendant stated that he had been drinking beer at the Cactus Club from about 6:30 p.m. to 12:30 a.m.

---

[3] Article first, § 8, of the constitution of Connecticut provides in pertinent part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

[4] There is no claim made that the advisement of rights was inadequate.

The trial court excluded all inculpatory statements made by the defendant prior to having his rights read to him at the police station. The defendant claims that the statements made after the *Miranda* warnings should also have been suppressed because of the taint from the illegal first "confession." We do not agree.

The defendant does not claim a violation of his federal constitutional rights; see *Oregon* v. *Elstad,* 470 U.S. 298, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985); but only of his constitutional rights to due process and against self-incrimination under our state constitution.[5] He argues that we should not adopt the *Elstad* standard, but, rather, we should apply a "break in the stream of events" test on the issue of derivative evidence. Under the *Elstad* standard, an initial statement given voluntarily while in custody without *Miranda* warnings does not automatically require the exclusion of a statement made after *Miranda* warnings are given. If the subsequent statement is found to have been voluntarily made, it is admissible unless the initial statement was coerced. When the initial statement, given while a defendant is in custody without having received *Miranda* warnings, is coerced, however, the court must determine whether the coercion has carried over to the statement given after *Miranda* warnings are given by examining "the time that passes between confessions, the change in place of interrogations, and the change in the identity of the interrogators . . . ." Id., 310.

Under the "break in the stream of events" standard, confessions made after *Miranda* warnings are given

---

[5] The state asks that we not review this "unpreserved" claim of a violation of the state constitution. Our review of the record discloses that the defendant's motion to suppress statements specifically referred to article first, § 8, of the constitution of Connecticut. While the motion is directed to statements made prior to the *Miranda* warnings as a result of a custodial interrogation, we deem it sufficient to have preserved the claim that the derivative evidence should have been excluded.

where there has also been a prewarning confession are presumptively inadmissible unless it can be shown that due to the "break in the stream of events" the taint from the earlier prewarning confession has been removed from the subsequent postwarning confession. This test is employed under the federal constitution only when the pre-*Miranda* statement was coerced. It is used to determine whether the statement given after *Miranda* warnings should be excluded. See *Westover* v. *United States*, decided with *Miranda* v. *Arizona*, 384 U.S. 436, 494–97, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Under *Elstad*, a second or subsequent statement will not be presumed to have been coerced merely because the defendant knew that " 'the cat' was already 'out of the bag.' " *State* v. *Torres*, 21 Conn. App. 568, 570, 575 A.2d 702, cert. denied, 216 Conn. 808, 580 A.2d 65 (1990).

*Miranda* warnings have come to have an independent significance under our state constitution and are required under the due process clause of article first, § 8, of the Connecticut constitution. *State* v. *Barrett*, 205 Conn. 437, 447, 534 A.2d 219 (1987). Their primary purpose is to ensure that an accused is aware of the constitutional right to remain silent before making statements to the police. *State* v. *Ferrell*, 191 Conn. 37, 41, 463 A.2d 573 (1983). The aim of *Miranda* was to ensure the defendant's right to choose between speech and silence. In the case before us, the defendant's initial statements, while part of a police custodial interrogation, are not claimed to have been obtained by coercive measures. The warnings required by article first, § 8, significantly enhance a person's opportunity to make a knowing, intelligent and voluntary decision whether to speak or remain silent. Without such warnings, the defendant could not be made aware that he had an essentially free and unconstrained choice to speak or remain silent.

We conclude that the trial court properly did not apply the "break in the stream of events" test. Having determined that the initial statement was voluntary,[6] although procured in violation of the defendant's *Miranda* rights, the trial court was justified in concluding that the *Miranda* violations did not taint the admissibility of his subsequent statements. "As long as all of the statements were voluntarily made, the fact that the police procured those statements in violation of the defendant's *Miranda* rights does not create a presumption that the police acted coercively." *State* v. *Roseboro*, 221 Conn. 430, 444, 604 A.2d 1286 (1992), citing *State* v. *Derrico*, 181 Conn. 151, 167, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). Because the statements made before *Miranda* warnings were given were not the product of coercion, the ultimate test as to the statements made after *Miranda* warnings were given must be whether they are the product of an essentially free and unconstrained choice by the defendant. We do not reject the principles addressed in *Elstad* under our state constitution, article first, § 8.

## II

The defendant next asserts that the trial court incorrectly found that he had waived his *Miranda* rights. We are unpersuaded.

Upon arrival at the police station, the defendant was advised of his *Miranda* rights and indicated that he understood them. He was then asked if he wanted to call an attorney and was told that he could use a telephone to make the call. The defendant stated that he

---

[6] The defendant does not appear to contest the voluntariness of the initial statement; his motion to suppress fails to bring forth a voluntariness claim. Our review of the record reflects that the defendant focused exclusively on the issue of whether the police were required to advise the defendant of his *Miranda* rights because of a custodial interrogation.

did not want to speak with a lawyer. He further indicated that he was willing to answer questions. In response to questions, the defendant said that he had been drinking beer at the Cactus Club from approximately 6:30 p.m. to 12:30 a.m.

*Miranda* warnings must be given to assure that an inculpatory statement is made as a result of an essentially free and unconstrained choice. *State* v. *Madera*, 210 Conn. 22, 48, 554 A.2d 263 (1989). "The state has the burden of proving by a preponderance of the evidence that the defendant knowingly and intelligently waived his *Miranda* rights, including his right to remain silent." *State* v. *Barrett*, supra, 205 Conn. 449. "Waiver must be 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)." *State* v. *Guess*, 39 Conn. App. 224, 231, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995). While silence alone is not sufficient to establish waiver, no specific expression of the relinquishment of rights need be shown in the record. *State* v. *Barrett*, supra, 450. Waiver may be inferred from the questioned person's words, actions and course of conduct. *State* v. *Irving*, 27 Conn. App. 279, 283, 606 A.2d 17, cert. denied, 222 Conn. 907, 608 A.2d 694 (1992). "The issue of whether the defendant has voluntarily, knowingly and intelligently waived his rights is not subject to an exact test but is an issue to be determined from the facts in the case." *State* v. *Roy*, 34 Conn. App. 751, 760, 643 A.2d 289 (1994), rev'd on other grounds, 233 Conn. 211, 658 A.2d 566 (1995).

As a reviewing court, in considering the validity of the waiver, we, like the trial court, look to the totality of the surrounding circumstances. *State* v. *Madera*, supra, 210 Conn. 49. The usual deference given to the function

of fact-finding by the trial court is qualified on questions of this nature by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. *State* v. *Stanley*, 223 Conn. 674, 686, 613 A.2d 788 (1992); *State* v. *Rosado*, 218 Conn. 239, 255, 588 A.2d 1066 (1991).

The defendant argues that the evidence in the record is insufficient to support the trial court's decision, and that the evidence that was presented was not qualitatively substantial. He claims his inculpatory statements are central to this case because of the "dearth of evidence against him." A scrupulous review of the record reveals that the trial court's fact-finding on this issue is supported by sufficient and substantive evidence. In addition to the evidence presented at the suppression hearing, the record discloses that the defendant was a sixty-six year old man who spoke and understood the English language and had some familiarity with police procedure, having been convicted of operating a motor vehicle while under the influence of intoxicating liquor at some time in the past. The only evidence presented did not show that the defendant is intellectually impaired or lacking sufficient education to be able to understand what was occurring. At no time did the defendant indicate that he did not understand his rights as presented, nor did he request that those rights be explained to him. He did not attempt to exercise his right to remain silent or to contact an attorney.

The actions and words of the defendant, together with his course of conduct, are sufficient to allow the trial court to infer a waiver. On the basis of the totality of surrounding circumstances, the trial court correctly found that the defendant's statements were given pursuant to a valid waiver, and that the defendant knowingly, intelligently and voluntarily waived his *Miranda* rights.

### III

The defendant also claims that, as it applies to this case, § 14-227a (f)[7] is unconstitutionally vague in violation of his constitutional right to due process pursuant to the fourteenth amendment to the United States constitution, and article first, § 8, of the Connecticut constitution.[8]

The facts relevant to this claim are as follows. While at the police station, the defendant was asked to submit to a breath test, and was advised of the consequences of refusing the test, which included suspension of his driver's license and the fact that his refusal may be admitted against him in a criminal prosecution pursuant to General Statutes § 14-227b (b).[9] The defendant

---

[7] General Statutes § 14-227a (f) provides: "In any criminal prosecution for a violation of subsection (a) or (b) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the requirements of subsection (b) of said section have been satisfied. If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test."

[8] Although the defendant claims a violation of both his state and federal constitutional rights not to incriminate himself, he has made no argument that his rights under the state constitution are different from or greater than his rights under the federal constitution and has not provided a separate analysis. We, therefore, consider only his claim under the federal constitution. *State* v. *Steiger*, 218 Conn. 349, 358 n.9, 590 A.2d 408 (1991).

[9] General Statutes § 14-227b (b) provides: "If any such person, having been placed under arrest for manslaughter in the second degree with a motor vehicle or assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege will be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight,

agreed, and the breath testing machine, known as the Intoximeter 3000, was prepared. The defendant was instructed to hold the breath tube, to form a seal around the end of it with his mouth and to blow into the tube for approximately ten seconds. The defendant refused to form a seal, blocked the tube with his tongue and blew air around the tube.

After a hearing outside the presence of the jury, the trial court found that there had been compliance with § 14-227b (b) and allowed the state to present evidence of the defendant's refusal to submit to a breath test.[10]

The defendant bases his claim on the lack of a definition of the word "refused" in the challenged statute.[11] The state claims that § 14-227a (f) does not give rise to a cognizable vagueness claim under a due process analysis because it is not a penal provision involving conduct that constitutes criminal activity, but rather a statutory method that permits a jury to consider and

and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege would be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight."

[10] During the charge to the jury, the trial court instructed, inter alia: "Now the state offered evidence of the defendant's refusal to submit to a breath test. The defendant had a right to refuse to take a breath test, but the question of whether or not he did refuse it is up to you. If you find that the defendant did refuse to submit to such a test . . . you may make any reasonable inference that follows from that fact."

[11] Agreeing to take the test but failing to provide an adequate sample can be construed to be a refusal pursuant to § 14-227a (f). *State* v. *Barlow*, 30 Conn. App. 36, 42–44, 618 A.2d 579 (1993). The defendant indicates that "[t]he decision in *Barlow* is wrong."

to draw inferences from a defendant's exercise of his option of refusing to submit to a chemical test.

While we agree that this may not be a penal statute, we nevertheless review the defendant's vagueness claim. Our Supreme Court has described the void for vagueness doctrine as applying to " 'a governing statute or regulation.' " *State* v. *Jones*, 215 Conn. 173, 179, 575 A.2d 216 (1990); see *State* v. *Schriver*, 207 Conn. 456, 459, 542 A.2d 686 (1988). The constitutionality of a statute's provision attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. *State* v. *Pickering*, 180 Conn. 54, 57, 428 A.2d 322 (1980).

Due process requires that a statute give to a person of ordinary intelligence a reasonable opportunity to know what is prohibited and provide explicit standards for those who apply them in order to prevent the risk of arbitrary and discriminatory enforcement. *State* v. *Tweedy*, 219 Conn. 489, 502, 594 A.2d 906 (1991).

"The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement." *State* v. *Schriver*, supra, 207 Conn. 459–60. Where first amendment freedoms are not implicated, as in this case, "a claim that a statute is void for vagueness is determined by its applicability to the particular facts presented." *State* v. *Smith*, 210 Conn. 132, 144, 554 A.2d 713 (1989).

The legislature did not provide a definition for "refused" in § 14-227a (f). It is not necessary to define a word that carries an ordinary, commonly understood meaning, is commonly used and is defined in standard dictionaries. See *State* v. *Lewtan*, 5 Conn. App. 79, 85, 497 A.2d 60 (1985). The word "refuse" is defined as "to

show or express unwillingness to do or comply with.
. . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993).

To surmount a vagueness challenge, a statute must afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. *State* v. *Schriver*, supra, 207 Conn. 460. Under the facts presented here, the defendant's claim that § 14-227a (f) is unconstitutionally vague must fail.

We construe the word "refuse" to have a sufficiently definite meaning that places an individual on adequate notice as to what conduct is prohibited. See *State* v. *Linares*, 232 Conn. 345, 358–59, 655 A.2d 737 (1995). Consequently, the dictionary definition makes it clear that "refusing" to take a breath test may be accomplished by a failure to cooperate as well as by an expressed refusal.

Thus, we conclude that § 14-227a (f) is not unconstitutionally vague under the United States constitution as applied to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.