# STATE OF CONNECTICUT *v.* EDWARD B.[1]
## (AC 20715)

Lavery, C. J., and Foti and Schaller, Js.

Argued January 15—officially released September 17, 2002

---

[1] In accord with court policy to protect the privacy rights of victims in matters concerning sexual abuse, we decline to use the names of individuals involved in this appeal. See General Statutes § 54-86e.

*Gerald E. Bodell*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, special deputy assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Kevin D. Lawlor*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[2] and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2).[3] On appeal, the defendant claims that he was denied his constitutional rights to due process and to a fair trial because (1) the court improperly denied his motion to suppress his written statement to the police and (2) the evidence adduced at trial was insufficient to support his conviction of sexual assault in the first degree. The defendant also

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony."

claims that the court improperly admitted the testimony of (3) a physician and (4) certain police officers, and (5) improperly instructed the jury.[4] We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the issues on appeal. The defendant sexually abused his daughter, B, several times in the family home. B was between six and seven years of age at the time the abuse occurred. The abuse took place between March, 1997, and March 24, 1998. The defendant was unemployed at the time that the abuse occurred, and had assumed responsibility for caring for B and her younger sister during the day while their mother, the defendant's wife, was at work. On March 26, 1998, social workers for a rape crisis center distributed pamphlets to the students at B's school, which described the difference between a "good touch" and a "bad touch." Upon returning home from work that day, B's mother saw the pamphlet and asked B if anyone had ever touched her in a bad way. B replied that the defendant had been touching her "private areas" on her chest, and below her waist "in the front and in the back." B stated that the touching happened "a lot" of times and probably began when she was attending kindergarten. B's mother confronted the defendant that evening, and he admitted that he had been molesting their daughter and that he had been touching her in a sexual way.

The following day, B's mother went to work and contacted the employee assistance program provided through her employer. Acting on the advice of the employee assistance program, B's mother and the defendant met with one of its representatives. After the meeting, they returned to their home separately. At approximately 3 p.m., two employees from the depart-

---

[4] For organizational clarity, we address the claims in an order different from that in which the defendant raised them.

ment of children and families (department) and two Milford police department officers arrived at the defendant's home. The defendant told one of the department employees that he had sexually abused his daughter.

Detective Robert Nash of the Milford police arrived later, interviewed the defendant and, on the basis of what the defendant and B's mother had told the department, advised him that he was a suspect in a crime. After the defendant stated that he was contemplating harming himself, Nash decided to send him to Milford Hospital for a psychological evaluation under a seventy-two hour emergency committal.

The defendant agreed to give a voluntary statement at the police station before being transported to the hospital. The police transported the defendant to their youth bureau office where officers informed him of his *Miranda*[5] rights. The defendant signed a waiver of rights form at that time and gave a written statement. The defendant described in some detail the abuse and when it occurred. After giving the statement, the defendant was transported by ambulance to the hospital.

Later on March 27, 1998, Alicia Ricks, a social work investigator for the department, took B to Yale-New Haven Hospital (Yale-New Haven) for a full medical examination. B described the contact between the defendant and herself to Daniel Campbell, a clinical social worker at Yale-New Haven. At trial, B testified as to the abuse through a videotape that was played for the jury. She was nine years old and in the fourth grade at the time she testified. Additional facts will be set forth where necessary.

I

We first address the defendant's claim that the court improperly denied his motion to suppress his written

---

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

statement to the police, thus violating his rights under the fifth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut.[6] Specifically, the defendant argues that the court should have found that the circumstances surrounding his statements at his home tainted the statement taken at the police station, despite the fact that the police in the interim had informed him of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We are not persuaded.

The following additional facts and procedural history are necessary for the resolution of the defendant's claim. At approximately 3 p.m. on March 27, 1998, Ricks and another employee from the department, and Officers Jeffrey Matchett and Todd Richards of the Milford police arrived at the defendant's home. The defendant told Ricks that he had been abusing his daughter for more than one year.

Nash arrived later on March 27, 1998.[7] Matchett and Richards advised him that the defendant had touched B inappropriately. Matchett also informed Nash that the defendant had made threats against his own welfare. Nash questioned the defendant about whether he had touched B inappropriately, and the defendant responded that he had. Nash then advised him that he was a suspect in a crime. Nash advised the defendant that he had a right not to speak with him. The defendant indicated that he still wanted to speak with him. Nash proceeded to interview the defendant for approximately ten to fifteen minutes. During the interview, Nash asked the defendant whether he made any threats against his

[6] The defendant cites to both the federal and state constitutions, but because he has "offered no separate and independent analysis of his claim under the state constitution, we confine our analysis to the United States constitution." *State* v. *Reed*, 56 Conn. App. 428, 436, 742 A.2d 1285, cert. denied, 252 Conn. 945, 747 A.2d 524 (2000).

[7] A fourth officer also was at the defendant's home during the interview.

own safety, which the defendant confirmed. Because the defendant was contemplating harming himself, Nash decided to send him to Milford Hospital for a psychological evaluation under a seventy-two hour emergency committal. Nash advised the defendant that he was not under arrest. He also advised him that he was not free to leave.

The defendant agreed to give a voluntary statement at the police station before being transported to the hospital. The police transported the defendant to their youth bureau office where officers gave him *Miranda* warnings. The defendant signed a waiver of rights form at that time and gave a written statement. The defendant admitted to sexually abusing his daughter. After giving the statement, the defendant was transported by ambulance to the hospital.

In his motion to suppress, the defendant claimed that his statements at home and at the police station were taken in violation of *Miranda*. The court agreed with the defendant, in part, and suppressed his initial oral statements because he was in custody at the time he made them and had not been given *Miranda* warnings prior to making those statements.[8] The court denied the motion with respect to the written statement that was given at the police station, ruling that that statement was admissible because it was made after the defendant

[8] The courted ruled on the defendant's motion to suppress, stating in relevant part: "I'm going rule that [the defendant] was in custody at the time that he was accosted by the police at [his home], that he was in custody while transported to the police department [and] that he was in custody while at the police department. I rule then that any statement that he made at the house is stricken as being improper and improperly taken because he wasn't advised of his rights.

"I'll rule, however, that his consent and his waiver rights, the forms that he signed at the police department, were formally taken, were valid waivers and consent by him that he was fully [made aware under *Miranda* of] his rights at that time so that any written statement that he gave from that point on . . . [was] a proper statement, and the court would rule that in."

was given *Miranda* warnings and after he had given written consent to waive his rights pursuant to *Miranda.*

On appeal, the defendant argues that he made his initial oral statements to the police involuntarily due to coercion inherent at the scene in his home. In his motion to suppress, he asserted that the statements were taken in violation of his fifth amendment privilege against self-incrimination and his sixth amendment right to the assistance of counsel. At the hearing on the motion, the defendant argued that the circumstances at his home inherently were coercive because of the presence of three[9] police officers and two social workers. He also appears to have argued that the fact that he was not free to leave added to the coercive atmosphere at his home. The defendant further argues that the "taint" from the scene at his home rendered the written statement at the police station a violation of *Miranda,* notwithstanding the fact that he had received *Miranda* warnings prior to giving the written statement.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." *State* v. *Clark,* 255 Conn. 268, 279, 764 A.2d 1251 (2001).

Citing *State* v. *Corbeil,* 41 Conn. App. 7, 11–12, 674 A.2d 454, cert. granted, 237 Conn. 919, 676 A.2d 1374 (1996) (appeal dismissed September 18, 1996), the

---

[9] Although the defendant claims three police officers were at the scene, Nash recalled that four officers were at the defendant's home during the interview.

defendant argues in his principal brief that the written statement should have been suppressed because "[t]here was no real break in the stream of events" between the oral statements that he made to the police at his home and the written statement that he gave later at the police station such that "[t]he *Miranda* warnings at the police station continued to be a product of the same coercion that existed at the house." That argument is misplaced because the defendant's initial statement to the police was voluntary.

Where an initial statement to police is inadmissible because a defendant was not given *Miranda* warnings, the standard for admitting a post-*Miranda* statement depends on whether the initial statement was given voluntarily. If the initial statement was voluntary, admission of the second statement does not violate the fifth amendment if it was given voluntarily and the *Miranda* waiver was effective. See *Oregon* v. *Elstad*, 470 U.S. 298, 308–309, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985); *State* v. *Roseboro*, 221 Conn. 430, 444, 604 A.2d 1286 (1992). If the first statement actually was coerced in violation of the fifth amendment, however, the second statement is inadmissible "unless it can be shown that due to the 'break in the stream of events' the taint from the earlier prewarning confession has been removed from the subsequent postwarning confession. . . . See *Westover* v. *United States*, decided with *Miranda* v. *Arizona*, [supra, 384 U.S. 494–97]." *State* v. *Corbeil*, supra, 41 Conn. App. 12. Accordingly, our initial inquiry is whether the pre-*Miranda* oral statements were voluntary. We conclude that they were.

"[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . . The ultimate test remains . . . . Is the confession the product of an

essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). . . . *State* v. *Shifflett*, [199 Conn. 718, 727–28, 508 A.2d 748 (1986)]." (Internal quotation marks omitted.) *State* v. *Hafford*, 252 Conn. 274, 299, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000); see also *State* v. *Williams*, 65 Conn. App. 59, 70, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001). "[W]e review the voluntariness of a confession independently, based on our own scrupulous examination of the record." (Internal quotation marks omitted.) *State* v. *Hafford*, supra, 299.

"We make such a determination by examining the totality of the circumstances surrounding the confession, and determining whether the confession [was] the product of an essentially free and unconstrained choice by the maker. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 65 Conn. App. 71.

Here, the facts support the court's determination that the defendant made the statements in his home voluntarily. The court granted the motion to suppress with respect to those statements because it found that the defendant was in custody while at his home and because he had not been given *Miranda* warnings at that time. When Nash arrived at the home, the defendant confirmed that he had touched his daughter inappropri-

ately. Although Nash then advised him that he was a suspect in a crime and that he had the right not to talk with him, the defendant decided to continue to talk. Nash subsequently decided to commit the defendant to a hospital for a psychological evaluation after learning from the defendant that he was contemplating harming himself. Nash questioned him for a brief time before the defendant was transported to the youth bureau. His detention was equally brief. The defendant does not claim, nor did the court make any findings, that he endured physical punishment or sleep deprivation that would support his contention that the suppressed statements were coerced.

The fact that Nash informed the defendant that he was not free to leave out of concern that he would harm himself does not automatically render the statements coerced. Similarly, the fact that there were at least three police officers at the defendant's home, in addition to the two department workers, does not, alone or in light of the circumstances, give rise to a presumption of coercion. Although the defendant argues that his detention for a committal served as a pretext for custody, he further requests that this court conclude that there was overbearing conduct by implication from the circumstances. On the facts, however, we discern no police conduct such that the defendant's will was overborne. We note that although the pretext argument may have served to support his assertion to the court that he was in custody at his home, the bare assertion that custody equals coercion is unavailing. See *State* v. *McLucas*, 172 Conn. 542, 557, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977), citing *United States* v. *Watson*, 423 U.S. 411, 424, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976). Accordingly, after careful review of the record, we conclude that the defendant made his oral statements at his home

voluntarily, notwithstanding the court's determination that they were taken in violation of *Miranda*.

"Having concluded that the defendant's initial statements to the police were voluntary, although procured in violation of his *Miranda* rights, the trial court was justified in concluding that the *Miranda* violations did not taint the admissibility of his subsequent statements. As long as all of the statements were voluntarily made, the fact that the police procured those statements in violation of the defendant's *Miranda* rights does not create a presumption that the police acted coercively." *State* v. *Roseboro*, supra, 221 Conn. 444.

Here, the defendant challenges the court's denial of his motion to suppress the written statement that he gave at the police station solely on the basis of his contention that the oral statements that he made earlier at his home had been coerced. Because we conclude that the statements at his home were not the product of coercion, the court properly refused to suppress the later statement. Accordingly, we conclude that the court's ruling on the motion was legally and logically correct.

## II

We turn next to the defendant's claim that the evidence adduced at trial was insufficient to support his conviction of sexual assault in the first degree. Count one of the information charged him with sexual assault in the first degree in violation of § 53a-70 (a) (2) in that on different dates between March, 1997, and March 23, 1998, he engaged in sexual intercourse with another person under thirteen years of age and that he was more than two years older than such person at the time. Count two of the information charged the defendant with violating § 53a-70 (a) (2) on or about March 24, 1998. The defendant argues specifically that the state did not meet its burden of proof to establish that he

had penetrated the victim, and he claims that there was "absolutely no proof" that sexual intercourse took place between March, 23, 1997, and March 23, 1998, or on March 24, 1998. We are not persuaded.

The following additional facts are relevant to our resolution of the defendant's claim. B was born on June 22, 1990, and was between six and seven years of age during the period when the abuse took place. The defendant was born on August 1, 1960, and was between thirty-six and thirty-seven years of age during that period.

B's mother testified that B told her that the defendant had been touching her "private areas" on her chest and below her waist "in the front and in the back," and that B had stated that the touching happened "a lot" of times and probably began when she was attending kindergarten. B's mother also testified that the defendant told her that the incidents had occurred "a couple of times," the last two times being March 23 and March 24, 1998, when B was home from school because of sickness.

Ricks testified that the defendant told her that he had been fondling B's breast and vaginal areas for more than one year and that he had placed his penis on the outside of B's vagina. In his written statement to the police, the defendant stated that he had been touching B "in her vagina area" and that he "might have touched her breasts," that "[t]his has been going on for about a year, but the amount of times was about 5 or 6 times at my house . . . ." He stated that when he first began touching B, he did so under her clothes, that the last time he touched her was March 24, 1998, and that during that incident, he "never put [his] penis in her, [but that] possibly [his] penis might have slipped between the lips of her vagina."

Later on March 27, 1998, Ricks took B to Yale-New Haven for a full medical examination where B described

the contact between the defendant and herself to Campbell, the clinical social worker there. Campbell testified at trial and, in the report that he wrote after his examination of B, stated that she had told him that "[m]y father put his private in my private." Nash also interviewed B at Yale-New Haven and, in a report that he wrote, stated that she had told him that "daddy took off her clothes and put his private into her private."[10]

B testified on videotape that the defendant on more than one occasion, including in the final incident on March 24, 1998, had touched her with his hand both on top of and below her clothes on her private parts, in particular, below her waist and on her chest. That touching made her feel uncomfortable, and the defendant hurt her when he moved his hands while touching her.

"In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Laracuente*, 57 Conn. App. 91, 95, 749 A.2d 34, 253 Conn. 923, 754 A.2d 798 (2000).

---

[10] Citing *State* v. *Owen*, 40 Conn. App. 132, 669 A.2d 606, cert. denied, 236 Conn. 912, 673 A.2d 114, cert. denied, 237 Conn. 922, 676 A.2d 1376 (1996), the defendant appears to argue that the evidence discussed could not be used to establish the date that the act or acts took place because constancy of accusation testimony cannot be used for that purpose. That argument is misplaced, as none of the testimony was admitted for constancy of accusation purposes.

We also note that in contemplating the evidence, "[t]he jury is entitled to draw reasonable and logical inferences . . . . [T]he jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . [I]n considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citation omitted; internal quotation marks omitted.) *State* v. *Hollby*, 59 Conn. App. 737, 743, 757 A.2d 1250, cert. denied, 254 Conn. 947, 762 A.2d 905 (2000).

The defendant's sole challenge to his conviction under § 53a-70 (a) (2) is that the state failed to prove that he engaged in sexual intercourse with B. "Sexual intercourse" is defined by statute to include "vaginal intercourse [or] anal intercourse . . . between persons regardless of sex. . . . Penetration, however slight, is sufficient to complete vaginal intercourse [or] anal intercourse . . . and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body." General Statutes § 53a-65 (2).

## A

The evidence is sufficient to support the conviction as to the first count of sexual assault in the first degree during the period between March 23, 1997, and March 23, 1998.

The jury heard testimony from B that the defendant had touched her private parts "a lot" of times. She testified that it happened more than once and on different days. The jury also heard testimony from Ricks that

the defendant had stated that he had been fondling B's breast and vaginal areas for more than one year. In his written statement to the police, the defendant stated that he had been touching B "in her vagina area" for about one year and had been touching her vagina under her clothes from the first instances of abuse.

Significantly, B testified that the defendant hurt her when he placed his hands under her clothes below her waist and moved his hands. Although that testimony initially was elicited with reference to the last time that the defendant had touched B, she stated that the touching occurred on previous occasions. B stated further that the defendant "did the same thing" when she was asked by the prosecutor what the defendant had done on the previous occasions. That testimony constitutes evidence from which a reasonable jury could infer that B also experienced pain on the other occasions when the defendant touched her.

Citing its decision in *State* v. *Albert*, 252 Conn. 795, 805, 750 A.2d 1037 (2000), our Supreme Court has noted that it has "concluded that, for purposes of first degree sexual assault by vaginal intercourse, the state need not prove penetration of the vagina, but, rather, penetration of the labia majora. . . . In so concluding, we explained that a *touching* of the labium majora satisfies the penetration requirement of §§ 53a-70 and 53a-65 (2) because penetration of the labia majora constitutes penetration of the body . . . ." (Emphasis added; citation omitted; internal quotation marks omitted.) *State* v. *Scott*, 256 Conn. 517, 534, 779 A.2d 702 (2001). In *Albert*, the court rejected the defendant's claim that he must put his finger " 'beyond the labia majora' " to fall within the definition of intercourse. *State* v. *Albert*, supra, 813. Significantly, the court then noted that even if it were to accept the defendant's interpretation, the fact that the victim stated that the defendant's touches hurt her presented evidence from which a reasonable

jury could have concluded that the defendant had put his finger *beyond* the victim's labia majora. Id.

In this case, construing the evidence in the light most favorable to sustaining the jury's verdict, the fact that the defendant hurt B, together with his admissions that he had been touching B in her vaginal area for more than one year and B's statements to that effect, presented the jury with evidence from which it could conclude beyond a reasonable doubt that the defendant had penetrated B such that he committed vaginal intercourse, as that term is defined by our statutes and has been interpreted by our Supreme Court, on at least one occasion between March 23, 1997, and March 23, 1998. See id.; *State* v. *Laracuente*, supra, 57 Conn. App. 97. Accordingly, we conclude that the cumulative effect of the evidence was sufficient to allow the jury to find beyond a reasonable doubt that the defendant did, in fact, sexually assault the victim between March 23, 1997, and March 23, 1998.

### B

The evidence also is sufficient to support the defendant's conviction as to the second count of sexual assault in the first degree. With regard to that count, the state refutes the defendant's contention that there is "absolutely no proof that sexual intercourse took place on a specifically referenced day" by referring to his written statement to the police. We agree with the state that the record reveals a very different quantum of evidence. Indeed, the jury heard evidence supporting the conclusion that the defendant had penetrated B on March 24, 1998, with his penis and while touching her with his hand.

The jury was entitled to believe the defendant when he stated to the police that his penis might have slipped between the lips of B's vagina the last time that he "touched" her. The defendant stated that the date of

that occurrence was March 24, 1998, at about 11 a.m. B's mother also related the defendant's statement describing March 24, 1998, as the last day that he had touched B. Further, Campbell and Nash testified that B had stated that the defendant put his private *"in* her private." See *State* v. *Albert,* supra, 252 Conn. 813 (victim's testimony that defendant touched "inside" her crotch presented evidence from which jury could have concluded defendant penetrated her vagina). Finally, as previously mentioned, B stated that on the last day of the abuse, when she was sick and home from school, the defendant "hurt" her when he touched her private parts. We conclude that the cumulative effect of the evidence was sufficient to allow the jury to find beyond a reasonable doubt that the defendant did, in fact, penetrate B and commit sexual assault in the first degree on March 24, 1998.

III

We next address the defendant's claim that the court improperly admitted the testimony of John M. Leventhal, a pediatrician and professor of medicine at Yale Medical School. Specifically, the defendant asserts that (1) Leventhal never was qualified as an expert witness and that he improperly testified as such, (2) the court improperly allowed him to testify as to his opinion on the ultimate issue in the case, namely, that penetration had occurred, (3) his testimony regarding the absence of physical injury was more prejudicial than probative and (4) his testimony regarding B's statements to Ricks was inadmissible hearsay. The defendant has failed to brief adequately any of those arguments in support of his claim. Claims that are inadequately briefed are deemed abandoned, and we are not bound to review them. *State* v. *Vicente,* 62 Conn. App. 625, 632, 772 A.2d 643 (2001). Accordingly, we decline to address those claims.

Practice Book § 67-4,[11] entitled "The Appellant's Brief; Contents and Organization," requires the appellant to include several specific elements in his brief. The appellant must provide "[a] concise statement setting forth, in separately numbered paragraphs, without detail or discussion, the principal issue or issues involved in the appeal, with appropriate references to the page or pages of the brief where the issue is discussed, pursuant to subsection (d) hereof. . . ." Practice Book § 67-4 (a). The appellant also must divide the argument "under appropriate headings . . . with appropriate references to the statement of facts or to the page or pages of the transcript or to the relevant document. . . ." Practice Book § 67-4 (d). Further, "[t]he argument on each point shall include a separate, brief statement of the standard of review the appellant believes should be applied." Practice Book § 67-4 (d). Additionally, "[w]hen error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the

---

[11] Practice Book § 67-4 provides in relevant part: "The appellant's brief shall contain the following:

"(a) A concise statement setting forth, in separately numbered paragraphs, without detail or discussion, the principal issue or issues involved in the appeal, with appropriate references to the page or pages of the brief where the issue is discussed, pursuant to subsection (d) hereof. The court may refuse to receive a brief not complying with this requirement. Such statement shall be deemed in replacement of and shall supersede the preliminary statement of issues.

\* \* \*

"(d) The argument, divided under appropriate headings into as many parts as there are points to be presented, with appropriate references to the statement of facts or to the page or pages of the transcript or to the relevant document. The argument on each point shall include a separate, brief statement of the standard of review the appellant believes should be applied.

\* \* \*

"(3) When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling. . . ."

question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling." Practice Book § 67-4 (d) (3).

The defendant has complied with none of those requirements with respect to his claims. First, in what he refers to as "Point I" in his principal brief, the defendant claims in one sentence that due process violations resulted from "the admission in evidence of unlawful testimony from police officers, social workers, a child abuse physician and [the] defendant that were incriminating and prejudicial . . . ." Second, the defendant failed to set forth a standard of review for any of the claims raised, let alone the claim at hand. Third, with regard to the specific evidentiary claims raised with respect to Leventhal's testimony, the defendant failed to state separately and specifically for each adverse ruling the question, the objection and grounds therefor, the grounds for admissibility or the court's ruling.

Moreover, the defendant failed to provide any meaningful analysis of the facts under the applicable constitutional provisions, and statutes, case law and evidentiary rules and rules of practice. Rather, he simply cites to them. "We are not required to review issues that have been improperly presented to this court through an inadequate brief." (Internal quotation marks omitted.) *State* v. *St. Pierre*, 58 Conn. App. 284, 296, 752 A.2d 86, cert. denied, 254 Conn. 916, 759 A.2d 508 (2000). In light of the fact that the defendant has briefed his claims inadequately, we decline to afford review.

IV

The defendant also claims that the court improperly admitted portions of the testimony of Matchett, Nash and Richards. The defendant failed to object at trial in a timely manner to the admission of the testimony by Matchett and Richards, and does not on appeal request

review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. Practice Book § 60-5. We "will not consider claimed errors on the part of the trial court unless it appears that the question was distinctly raised at the trial and was ruled upon and decided by the trial court . . . ." (Internal quotation marks omitted.) *Skrzypiec* v. *Noonan*, 228 Conn. 1, 13, 633 A.2d 716 (1993). Additionally, with respect to Nash's testimony, the defendant failed to brief the claim adequately. Not only did the defendant again fail to articulate his argument in accordance with the rules of appellate practice, but he also failed to provide the relevant portions of the record. Finally, he provides no legal analysis under, nor does he even refer us to, relevant legal authority. Accordingly, we decline to address his claim.

V

Last, we address the defendant's claim that the court instructed the jury improperly with respect to the charge of sexual assault in the first degree, thereby depriving him of his due process rights. Specifically, the defendant argues that in marshaling the evidence, the court improperly (1) commented on Leventhal's testimony and (2) lessened the state's burden to prove every element of the charges beyond a reasonable doubt.

The defendant has failed to provide a record adequate for our review of his claim. Practice Book § 67-4 (d) (2) provides in relevant part: "When error is claimed in the charge to the jury, the brief or appendix shall include a verbatim statement of all relevant portions of the charge and all relevant exceptions to the charge. . . . Evidence relevant to the claimed error shall be recited in narrative form with appropriate references to the page or pages of the transcript." Although the defendant has provided in the appendix to his brief the

portions of the court's instruction relevant to his claim, he does not provide the record of any relevant exceptions that he took to the charge, nor does he make the appropriate references to the transcript. Accordingly, we decline to review his claim.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] Even if we were to attempt to review his claim on the basis of the record provided, we would conclude that the defendant did not brief the claim adequately. In support of each argument in his claim, the defendant cited one case and provided no analysis whatsoever as to how those cases bear on the issues presented.

Further, in his reply brief, the defendant appears to request, for the first time, plain error review regarding the court's comment on Leventhal's testimony. "[I]t is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 48 n.42, 717 A.2d 77 (1998).