STATE OF CONNECTICUT *v.* MICHAEL A. TORELLI
(AC 27709)

Bishop, Harper and Peters, Js.

Argued May 24—officially released September 11, 2007

*Gregory P. Cohan*, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's

attorney, and *Helen M. McLellan*, assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. Pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), a police officer has authority, under the fourth amendment to the United States constitution, to stop the driver of a car if the officer has a reasonable and articulable suspicion that the driver has engaged in illegal conduct. The principal issue in this appeal is whether an informant's report of an erratic driver exhibited sufficient indicia of reliability to justify a *Terry* stop of the driver for operating a motor vehicle while under the influence of intoxicating liquor, even though the police officer neither observed the errant driving nor knew the informant's name. Under the circumstances of this case, we affirm the judgment of the trial court convicting the defendant as charged.

On July 13, 2005, the state filed an information charging the defendant, Michael A. Torelli, with operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[1] After an evidentiary hearing, the trial court, *Damiani, J.*, denied the defendant's motion to dismiss the information and his motions to suppress evidence obtained pursuant to his arrest, all of which alleged that the police had stopped the defendant's vehicle without the requisite reasonable and articulable suspicion. The defendant then entered a conditional plea of nolo contendere pursuant to General Statutes § 54-94a.[2] The trial

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ." Although the information initially also charged the defendant with reckless driving and failure to drive in the proper lane, in violation of General Statutes §§ 14-222 and 14-236, respectively, the state later nolled those charges.

[2] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's

court, *Alexander, J.*, accepted the plea and rendered judgment thereon.[3] This appeal followed.

Judge Damiani found credible the testimony of Branford police Officer Jomo Crawford, who conducted the *Terry* stop. Due to the observations that Robert Gillis, a citizen informant, conveyed to the Branford police department, Crawford was able to locate the defendant's vehicle and corroborate its make, model, color, location and direction of travel.[4] Gillis, driving his own vehicle, had followed the defendant through town because he had become concerned that the defendant was driving under the influence. When Crawford, traveling in the opposite direction, crossed paths with Gillis and the defendant, Gillis reported seeing a police cruiser go by. Crawford confirmed that he had just passed both cars, made a U-turn and caught up to the defendant's vehicle. Before Crawford made the stop, he was assured by a police dispatcher that Gillis would be identifiable and that the dispatchers were then obtaining Gillis' name.

The defendant has raised two issues in his appeal. He maintains that the trial court improperly (1) found

motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[3] As a third time drunken driving offender, the defendant was subject to a mandatory minimum sentence and fine and a permanent revocation of his driving privileges. Judge Alexander sentenced the defendant to three years incarceration, execution suspended after a one year mandatory minimum term, followed by three years probation, a mandatory $2000 fine and 250 hours of community service.

[4] Gillis had placed a 911 call from his car and was connected to the Branford dispatcher.

that the arresting officer had a reasonable and articulable suspicion to perform an investigatory stop and (2) admitted hearsay statements into evidence in violation of the Connecticut Code of Evidence.[5] Because we are not persuaded by either of these claims, we affirm the judgment of the trial court.

I

The defendant's principal claim on appeal is that the court should have ruled that Crawford did not have a reasonable and articulable suspicion to stop the defendant's car because, without knowing Gillis' identity, Crawford lacked sufficient corroborating information of the defendant's erratic driving. We disagree.

Our review of *Terry* stop claims is governed by a well established standard of review. "The determination of whether reasonable and articulable suspicion exists rests on a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts give rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 504–505, 838 A.2d 981 (2004).

A

The defendant challenges the sufficiency of the evidence to support the court's finding that Crawford had a reasonable and articulable suspicion that the defendant was driving under the influence of intoxicating liquor. Emphasizing that Crawford did not personally observe

---

[5] To the extent that the defendant asserts a claim of a violation of article first, §§ 7, 8 and 9, of our state constitution, his claim does not meet the standard for review enunciated in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992) (defendant must provide independent analysis under particular provision of state constitution). See *State* v. *Pierre*, 277 Conn. 42, 74 n.12, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). Because the defendant's state constitutional claim was not briefed properly, we deem it to be abandoned.

him driving erratically, the defendant maintains that the record does not support the court's finding that the information provided by Gillis was sufficiently corroborated to provide a basis for Crawford to stop the defendant's car. In particular, he maintains that the record does not support the court's finding that Crawford had reliable information about Gillis' identity before the *Terry* stop. We disagree.

Recordings from the Branford police dispatch office reveal that Gillis stated in his 911 call, "I called here to report a drunk driver. I'm still following him. He's all over the place . . . ." These recordings also demonstrate that as a result of Gillis' observations, a dispatcher provided Crawford with the make, model, color and location of the defendant's car as it passed through various intersections along Main Street in Branford. When Crawford crossed paths with the defendant's pickup truck and the trailing informant, Gillis reported, "[A] cop just passed me." The dispatcher relayed this comment to Crawford, who replied, "Yeah, that will be me." Crawford then made a U-turn and caught up with the defendant's car.

The recordings also reveal that prior to turning on his vehicle's overhead lights to stop the defendant, Crawford asked the dispatcher, "[D]o you have the [complainant's] information?"[6] The dispatcher responded, "We're getting that now for you."[7] Crawford testified that, relying on this response, he believed that the informant was identifiable.

---

[6] During the evidentiary hearing, Lieutenant Geoffrey Morgan of the Branford police department testified that under department training guidelines, Branford dispatchers were to provide the name of a 911 caller to the investigating officer, should the officer ask for it. Crawford later testified, "I made contact with dispatch and asked them . . . if they did have the witness' information to confirm that we could make contact with this party in the future."

[7] The dispatch recordings show that Gillis provided his name to the dispatcher prior to Gillis' report that Crawford had activated his vehicle's overhead lights. The dispatcher did not relay the name to Crawford.

This evidence, supported by a detailed computer printout of the relevant telecommunications, demonstrates that the factual findings of the court were not clearly erroneous. Contrary to the claim of the defendant, Gillis was not an unidentified informant.

B

The defendant also challenges the propriety of the court's legal conclusion that the facts of record provided a sufficient basis for a reasonable and articulable suspicion for a *Terry* stop. The cornerstone of the defendant's argument is that, from Crawford's perspective, Gillis was an unreliable informant because the dispatcher did not forward Gillis' name to Crawford prior to the *Terry* stop. According to the defendant, without having more information about Gillis' identity, Crawford could not corroborate the report of the defendant's erratic driving because he had no objective basis for evaluating Gillis' veracity, reliability and basis of knowledge. Under these circumstances, the defendant asserts that the record lacks sufficient corroborative evidence to give rise to a reasonable and articulable suspicion of criminal misconduct. We disagree.

An investigating officer may briefly stop a motorist if the officer has a reasonable and articulable suspicion "that criminal activity may be afoot . . . ." *Terry* v. *Ohio*, supra, 392 U.S. 30. "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." (Internal quotation marks omitted.) *State* v. *Wilkins*, 240 Conn. 489, 496, 692 A.2d 1233 (1997). Whether a reasonable and articulable suspicion exists depends on the totality of the circumstances. *State* v. *Nash*, 278 Conn. 620, 641, 899 A.2d 1 (2006).

In cases in which a police stop is based on an informant's tip, corroboration and reliability are important factors in the totality of the circumstances analysis. "[I]nformants do not all fall into neat categories of *known* or *anonymous*. Instead, it is useful to think of known reliability and corroboration as a sliding scale. Where the informant is known from past practice to be reliable . . . no corroboration will be required to support reasonable suspicion. Where the informant is completely anonymous . . . a significant amount of corroboration will be required. However, when the informant is only partially known (i.e., [informant's] identity and reliability are not verified, but neither is [informant] completely anonymous), a lesser degree of corroboration may be sufficient to establish reasonable suspicion." *United States* v. *Elmore*, 482 F.3d 172, 181 (2d Cir. 2007).

Contrary to the defendant's argument, our Supreme Court has recognized that "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." (Internal quotation marks omitted.) *State* v. *Hammond*, 257 Conn. 610, 617, 778 A.2d 108 (2001), quoting *Florida* v. *J. L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). "[T]here is no per se rule requiring an officer to obtain the identity of an informant before he acts." *United States* v. *Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir.), cert. denied, 439 U.S. 936, 99 S. Ct. 333, 58 L. Ed. 2d 333 (1978). Police efforts in verifying information provided by an informant may help verify his or her reliability. *State* v. *Smith*, 257 Conn. 216, 226, 777 A.2d 182 (2001), on appeal after remand, 94 Conn. App. 188, 891 A.2d 974, cert. denied, 278 Conn. 906, 897 A.2d 100 (2006).

*Florida* v. *J. L.*, supra, 529 U.S. 266, illustrates the absence of the requisite corroboration. In that case, an

anonymous informant called the police to report that a young black male wearing a plaid shirt, standing at a particular bus stop, was carrying a gun. Id., 268. The United States Supreme Court held that the informant's tip lacked the "moderate indicia of reliability" required for reasonable and articulable suspicion because "[a]ll the police had to go on . . . was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the defendant]." Id., 271. In particular, the court noted that the anonymous caller provided no predictive information, such as the man's movements, and therefore left the police without any means to test the informant's knowledge or credibility. Id.

Our Supreme Court engaged in a similar analysis in *State* v. *Hammond,* supra, 257 Conn. 610. In that case, an anonymous informant called the police to report two men dealing drugs and described their skin color, height, clothing and location. Id., 615. Our Supreme Court held that the police did not have a legally sufficient basis for stopping two men who fit the informant's description. Id., 625–26. The court stated: "What matters for our purposes . . . is not simply that the officers could not guarantee that they could track down the informant again. The question is whether the tip should be deemed sufficiently trustworthy in light of the total circumstances. Without a doubt, an anonymous tip can have certain other features that support reliability even if the police cannot narrow the likely class of informants." Id., 623. The stop was unjustified because the police did not corroborate the allegations of drug dealing. Id. The innocuous details provided by the anonymous informant "added nothing to the reliability or credibility of the tip, but merely allowed the police to pinpoint the persons who were the targets of the accusation." Id., 624.

*Florida* v. *J. L.*, supra, 529 U.S. 266, and *Hammond* are distinguishable because in this case the informant provided a play-by-play of the defendant's various locations, in contrast to the bare reports of individuals at static sites. Furthermore, in this case the informant was not completely anonymous, but rather positioned his car to be identifiable, thereby increasing his reliability.

Other Connecticut cases are more useful precedents because they more closely resemble the facts in this case. One such precedent is *State* v. *Torres*, 230 Conn. 372, 645 A.2d 529 (1994), in which our Supreme Court held that a reasonable and articulable suspicion existed for a *Terry* stop because of corroboration of an unnamed informant's report of drug activity. The informant's report identified an alleged drug dealer by describing the car he would be driving, the route he would be taking and the time that he would pass a designated site. Id., 375. "Every aspect of the tip was corroborated by [the state trooper] during the period before and after he stopped the defendant's car. The tip not only revealed facts in existence at the time of the call, but also predicted the defendant's future behavior, namely his destination and the approximate time of his arrival." Id., 383. The court concluded that the accurate predictive elements of the tip made it sufficiently reliable to serve as a basis for a *Terry* stop. Id., 384.

Similarly, in *State* v. *Bolanos*, 58 Conn. App. 365, 753 A.2d 943 (2000), this court held that a reasonable and articulable suspicion existed for a *Terry* stop of an alleged drunken driver based on an unnamed informant's tip, even though neither the police nor the informant had observed any erratic driving prior to the stop. Because the informant was an employee of a nightclub familiar to the police, the informant's identity was ascertainable. Id., 369. "When an informant provides sufficient information so that he may be located and held accountable for providing false information, the officer

is justified in assuming the caller is being truthful in so identifying himself. . . . [C]itizen informers are presumptively reliable if they are identifiable." (Citations omitted; internal quotation marks omitted.) Id. Moreover, the informant's opinion of the defendant's level of intoxication was credible because it was "reasonable to infer that the employee who furnished the information knew when a person was under the influence of intoxicating liquor because of his job in a nightclub that serves alcoholic beverages." Id. Finally, the police corroborated the informant's report of the make, model, color and direction of the defendant's car. Id., 370.

In this case, as in *Torres* and *Bolanos*, the information that Crawford obtained from the dispatcher was sufficiently corroborated to provide a reliable basis for stopping the defendant. Although information about the make, model and color of the defendant's car was in itself innocuous, the car's location corroborated the informant's report. Furthermore, unlike the informants in *Florida* v. *J. L.*, supra, 529 U.S. 266, and *Hammond*, Gillis was not completely unidentifiable. By remaining on the telephone with the dispatcher and following the defendant from the highway through several intersections in Branford, Gillis not only facilitated corroboration of innocuous details of the defendant's vehicle, but also permitted himself to be identified by sight. Under the circumstances, Crawford reasonably could have inferred that Gillis was sufficiently identifiable to be reliable.

For that reason, we disagree with the defendant that this case is analogous to *United States* v. *Colon*, 250 F.3d 130 (2d Cir. 2001). In *Colon*, an anonymous informant's report to a civilian 911 operator contained information determining her identity, thereby making her sufficiently reliable. Id., 133. This identifying information, however, was never relayed to an investigating officer. Id. The court ruled that because the civilian operator

was untrained in the reasonable and articulable suspicion standard, the critical information that made the informant reliable could not be imputed to the investigating officer under the collective knowledge doctrine. Id., 137. *Colon* is distinguishable. When Crawford learned that he had crossed Gillis' path, he reasonably could have inferred that Gillis was sufficiently identifiable to be reliable, independent from any further information possessed by the civilian dispatcher.

The defendant would also have us assign dispositive weight to the fact that Crawford did not himself observe the defendant's erratic driving. We decline to take so narrow a view of the relevant circumstances. Because of the state's pervasive interest in preventing drunken driving, the officer was not required to wait for erratic driving or an accident to occur before pulling over the defendant. See *State* v. *Bolanos*, supra, 58 Conn. App 370; see also *United States* v. *Wheat*, 278 F.3d 722, 729–30 (8th Cir. 2001), cert. denied, 537 U.S. 850, 123 S. Ct. 194, 154 L. Ed. 2d 81 (2002).

By way of summary, we are persuaded that, whether or not Gillis' name was known at the relevant time, viewed in its totality, the information provided to Crawford by the Branford dispatcher was sufficiently corroborated to give a reasonable police officer the requisite level of suspicion to justify a *Terry* stop of the defendant for drunken driving. The evidentiary record thus supports the trial court's legal conclusion that Crawford had a reasonable and articulable suspicion to stop the defendant when he did.

II

In the defendant's second challenge to his conviction, he argues that the trial court improperly admitted into evidence the digital recordings of the 911 telephone call between Gillis and the Branford dispatcher. At the evidentiary hearing, when the state sought to admit the

recordings of the 911 communications, the defendant objected, claming that the contents of the call were inadmissible testimonial hearsay under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Acknowledging that the law was unclear as to whether 911 calls were testimonial or nontestimonial, the court overruled the defendant's objection. The court concluded that the recording was admissible within the business record exception to the rule against hearsay because 911 operators have a duty to take the calls and record them. The court rejected the defendant's objection that the exception was inapplicable because civilians who relay information to the police are under no business duty to do so. On appeal, the defendant reiterates his claim that the admission of the 911 recording constituted harmful error.[8] We are not persuaded.

As an initial matter, we note that there is no longer a basis for the defendant's constitutional claim that *Crawford* v. *Washington*, supra, 541 U.S. 36, bars admission of the 911 recording. The United States Supreme Court has recently ruled that statements made by 911 callers reporting an ongoing emergency do not constitute "testimonial" statements that are rendered inadmissible by the provisions of the confrontation clause contained in the sixth amendment to the United States constitution. *Davis* v. *Washington*, 547 U.S. 813, 828–29, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

We turn therefore to the defendant's alternate contention that, as an evidentiary matter, the court improperly allowed the 911 call into evidence under the

---

[8] We note that, on appeal, the state now contends that the recording was not hearsay at all. We decline to address the state's contention because the state conceded during the evidentiary hearing that the 911 communications were hearsay and suggested to the court that they be admitted under the business record exception.

business record exception to the hearsay rule.[9] For an evidentiary ruling that does not raise a constitutional question, "[o]ur standard of review . . . is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Cole*, 50 Conn. App. 312, 330–31, 718 A.2d 457 (1998), aff'd, 254 Conn. 88, 755 A.2d 202 (2000).

"To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in [General Statutes] § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . In applying the business records exception, the statute [§ 52-180] should be liberally interpreted." (Internal quotation marks omitted.) *Calcano* v. *Calcano*, 257 Conn. 230, 240, 777 A.2d 633 (2001). "Once [the criteria] have been met by the party seeking to introduce the record . . . it does not necessarily follow that the record itself is generally admissible, nor does it mean that everything in it is required to be admitted into evidence. . . . [T]he information contained in the [business record] must be based on the entrant's own observation or on information of others

---

[9] The business record exception is codified in General Statutes § 52-180, which provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter. . . ." See also Conn. Code Evid. § 8-4.

whose business duty it is to transmit it to the entrant. . . . If the information does not have such a basis, it adds another level of hearsay to the report which necessitates a separate exception to the hearsay rule in order to justify its admission." (Internal quotation marks omitted.) *State* v. *William C.*, 267 Conn. 686, 704, 841 A.2d 1144 (2004). "Hearsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception." Conn. Code Evid. § 8-7.

In *State* v. *Milner*, 206 Conn. 512, 539 A.2d 80 (1988), our Supreme Court criticized a trial court's reliance on the business record exception to admit into evidence a police record containing the hearsay statement of an anonymous caller. "Statements obtained from volunteers are not admissible though included in a business record because it is the duty to report in a business context which provides the reliability to justify this hearsay exception. . . . Information in a business record obtained from a person with no duty to report is admissible only if it falls within another hearsay exception. . . . Under the circumstances of this case, the trial court erred in admitting the hearsay statements contained in the [officer's] report because the identity of the caller was unknown, thus preventing a determination as to whether it was the caller's business duty to report such information." (Citations omitted; internal quotation marks omitted.) Id., 521;[10] see also *Bemis* v. *Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) ("because citizens who call 911 are not under any 'duty to report,' . . . a recorded statement by a citizen must satisfy a separate hearsay exception" [citation omitted]).

To be admissible, therefore, 911 statements must fall "within another hearsay exception" and our Supreme

---

[10] The court ultimately concluded that the erroneous admission was harmless error. *State* v. *Milner*, supra, 206 Conn. 523.

Court so held in *State* v. *Kirby*, 280 Conn. 361, 908 A.2d 506 (2006). The court there concluded that a complainant's statements in a 911 call were admissible as spontaneous utterances pursuant to § 8-3 (2) of the Connecticut Code of Evidence, even though the complainant's statements were made after the emergency had ended.[11] Id., 376–77. In coming to this conclusion, the court observed that "[t]he excited utterance exception is well established. Hearsay statements, otherwise inadmissible, may be admitted into evidence to prove the truth of the matter asserted therein when (1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." (Internal quotation marks omitted.) Id., 374.[12]

---

[11] In *Kirby*, the statements were admissible as spontaneous utterances because not enough time had lapsed between the 911 call and the alleged criminal incident. The statements were excluded under *Crawford*, however, because the call at issue was made after the emergency had been averted and the complainant was no longer under any threat from the defendant. *State* v. *Kirby*, supra, 280 Conn. 384–85.

[12] Courts in other jurisdictions have allowed 911 statements into evidence either under the "excited utterance" exception to the hearsay rule or under the "present sense impression" exception to that rule. See *People* v. *Hendrickson*, 459 Mich. 229, 235, 586 N.W.2d 906 (1998) ("[i]n determining whether an abuse of discretion occurred, we consider if the 911 audiotape recording of the victim's statement that defendant had just beaten her constituted a present sense impression"); *United States* v. *Mejia-Velez*, 855 F. Sup. 607, 613–14 (E.D.N.Y. 1994) (admitting under either exception a tape of 911 call made by an eyewitness immediately following a shooting); *United States* v. *Campbell*, 782 F. Sup. 1258, 1260–61 (N.D. Ill. 1991) (admitting under either exception a 911 tape of an eyewitness' description of a gunman). Neither our state case law nor the Connecticut Code of Evidence includes a present sense impression exception to the hearsay rule. We note that the New York Court of Appeals, in considering a case involving contemporaneous eyewitness statements made during a 911 statement adopted that exception on the ground that "[t]he rule . . . has been accepted in some form by the majority of States and has now been widely approved by legal commentators . . . ." (Citation omitted.) *People* v. *Brown*, 80 N.Y.2d 729, 733–34, 610 N.E.2d 369, 594 N.Y.S.2d 696 (1993).

Applying *Kirby* to the circumstances of this case, we are persuaded that Gillis' statements to the 911 dispatcher were admissible because they satisfied the criteria for the spontaneous utterance exception to the hearsay rule. Startled by an erratic driver, Gillis called 911. During the call, he continued to observe and comment on the defendant's erratic driving and course of travel. His declarations were made in the course of an ongoing urgent situation, negating the opportunity for deliberation or fabrication. "The ultimate question is whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation." *Cascella* v. *Jay James Camera Shop, Inc.*, 147 Conn. 337, 342, 160 A.2d 899 (1960).

We conclude, therefore, that the court did not abuse its discretion by ruling that the 911 communications were admissible at the evidentiary hearing, even though the court did not articulate the proper basis for its ruling. This court may sustain the admission of evidence on any proper ground that exists for its admission. *State* v. *Williams*, 48 Conn. App. 361, 367, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998).

The judgment is affirmed.

In this opinion the other judges concurred.