# STATE OF CONNECTICUT *v.* THOMAS W. JENSEN
## (AC 29035)

Flynn, C. J., and Gruendel and Harper, Js.

Argued May 22—officially released August 5, 2008

*Gregory A. Thompson,* for the appellant (defendant).

*Elizabeth A. Colombo,* certified legal intern, with whom were *Bruce R. Lockwood,* assistant state's attorney, and, on the brief, *Scott J. Murphy,* state's attorney, and *Christian M. Watson,* assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Thomas W. Jensen, appeals from the judgment of conviction rendered following his conditional plea of nolo contendere[1] to operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a. The plea followed the trial court's denial of the defendant's motion to suppress. On appeal, the defendant claims that the court improperly denied the motion to suppress the evidence that had been obtained following the investigative or *Terry* stop of his motor vehicle because the police officers did not possess a reasonable and articulable suspicion of criminal activity to justify the stop. See *Terry* v. *Ohio,* 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). We disagree and affirm the judgment of the trial court.

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

On March 5, 2007, the defendant filed a motion to suppress all evidence that had been obtained pursuant to the stop of his motor vehicle. The court conducted an evidentiary hearing on the motion to suppress on May 10 and 16, 2007. At the suppression hearing, the state presented the testimony of Janet Thayer. Thayer testified to the following facts. At approximately 10:30 p.m. on July 16, 2006, Thayer and her husband were traveling on Meriden Waterbury Turnpike in Southington when they observed a dark colored sport utility vehicle driven by the defendant. After determining that the defendant was not driving well, Thayer and her husband, who were driving in their own vehicle, decided to follow the defendant.

As they traveled behind the defendant, Thayer and her husband observed the defendant's vehicle repeatedly swerve and cross the yellow line. Thayer, concerned for the safety of other people and for the defendant, contacted 911 using her cellular telephone. Thayer informed the Southington police department dispatcher that she and her husband were following a vehicle that was being driven erratically and provided a description of the defendant's sport utility vehicle, including its make, model and license plate number. While on the telephone with the dispatcher, Thayer continued to observe the defendant weave in and out of the travel lane. At one point, the defendant entered a parking lot adjacent to the Marion post office and then exited the parking lot, traveling on Meriden Waterbury Turnpike in the direction opposite from which he had been driving. Thayer and her husband turned around and followed the defendant. Thayer also saw the defendant swerve into another lane and almost collide with another motor vehicle. Upon arriving at the scene, police officers confirmed the identification of the motor vehicle with Thayer and her husband and then informed Thayer and her husband that they could leave.

The state also presented the testimony of Officers Scott Wojenski and James Armack of the Southington police department, who were on patrol duty together in Wojenski's police cruiser during the evening hours of July 16, 2006, in the vicinity of Meriden Waterbury Turnpike. Wojenski and Armack testified that at approximately 10:30 p.m., they received a transmission from the police department dispatcher, indicating that a citizen had reported an erratic driver on Meriden Waterbury Turnpike. The dispatcher also provided the police officers with a description of the motor vehicle, including the vehicle's make, model and license plate number. After receiving updates from the dispatcher regarding the location of the vehicle, the police officers came upon the defendant's vehicle, which fit the description of the vehicle that they had received, at the intersection of Meriden Waterbury Turnpike and the entrance ramp for Interstate 84. Armack stated that he initially noticed the defendant's vehicle stopped at a green traffic signal. Both officers also observed the defendant's vehicle driving very slowly through the green traffic signal. According to Wojenski and Armack, the defendant was traveling fifteen miles per hour in a speed zone of forty miles per hour. Before activating the emergency signals on the police cruiser, the police officers noticed a motor vehicle being driven behind the defendant's vehicle, and Armack testified that a woman from that other vehicle was pointing in the direction of the defendant. The police officers then stopped the defendant's vehicle. Wojenski testified that the sole basis for the stop of the defendant's vehicle was the information from the citizen's complaint. Armack testified that he and Wojenski "more or less pulled [the defendant's] vehicle over due to the fact that it matched all the descriptions that dispatch gave [to them]" but he also noted that the defendant was driving very slowly.

On June 8, 2007, the court issued a memorandum of decision, denying the defendant's motion to suppress.

The court found that at the time of the stop, the police officers knew from the complaint of Thayer, an identifiable citizen informant, that the defendant had been driving erratically. In addition, the court found that the police officers personally observed the vehicle, which had been described to them in the citizen complaint, "driving slowly, if not stopping, at a green light and driving fifteen miles per hour in a forty mile per hour zone." The court therefore concluded that "the information that the defendant was driving erratically, when combined with the police officers' own observations of the defendant driving in an unusually slow manner, gave the police at least reasonable suspicion to believe that the defendant was driving under the influence of alcohol."

After the court denied the motion to suppress, the defendant entered a conditional plea of nolo contendere, which the court accepted. The court subsequently sentenced the defendant to six months incarceration, execution suspended after forty-eight hours, and eighteen months of probation with conditions. This appeal followed.

On appeal, the defendant claims that the court improperly denied his motion to suppress and challenges the court's factual findings as well as its legal conclusions. We are not persuaded by the defendant's arguments.

"[O]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the

court's [ruling] . . . ." (Internal quotation marks omitted.) *State* v. *Jones*, 281 Conn. 613, 654, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007).

"When considering the validity of a *Terry* stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officer] possessed a reasonable and articulable suspicion at the time the seizure occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 503, 838 A.2d 981 (2004).

"The determination of whether a reasonable and articulable suspicion exists rests on a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) Id., 504–505.

"Under the fourth amendment to the United States constitution, and under article first, [§§ 7 and 9] . . . of the Connecticut constitution, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 281, 764 A.2d 1251 (2001). "[I]n justifying [a] particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) *State* v. *Santos*, supra, 267 Conn. 505.

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . Whether a reasonable and articulable suspicion exists depends on the totality of the circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Torelli*, 103 Conn. App. 646, 652, 931 A.2d 337 (2007).

The defendant asserts that the court improperly concluded that the police had a reasonable and articulable suspicion to justify the *Terry* stop. The defendant claims that the record lacks sufficient corroborative evidence to give rise to a reasonable and articulable suspicion because the police officers, who observed only slow driving on the part of the defendant, did not observe the defendant driving erratically. The defendant also claims that the court made an improper "finding that the stop was based partially on the observations of erratic driving by the officers . . . ." We disagree.

We first address the defendant's claim that the record does not contain sufficient corroborative evidence to give rise to a reasonable and articulable suspicion. Specifically, the defendant asserts that the information that Thayer, the citizen informant, conveyed to the Southington police dispatcher was not sufficiently corroborated because the police officers did not observe firsthand any erratic driving.[2]

---

[2] In his statement of the issues and in the main point heading of his brief to this court, the defendant appears to argue that an informant's report of erratic driving, which was conveyed to the responding police officers but did not contain any specific details concerning the nature of the erratic driving or the name of the informant, cannot give rise to a reasonable and articulable suspicion to justify a *Terry* stop. The defendant, however, did not address these claims in his brief, nor did he provide citations or analysis of case law in support thereof. "Claims that are inadequately briefed are deemed abandoned, and we are not bound to review them." *State* v. *Edward B.*, 72 Conn. App. 282, 298, 806 A.2d 64, cert. denied, 262 Conn. 910, 810 A.2d 276 (2002). Accordingly, we decline to review the claims.

"In cases in which a police stop is based on an informant's tip, corroboration and reliability are important factors in the totality of the circumstances analysis. '[I]nformants do not all fall into neat categories of *known* or *anonymous*. Instead, it is useful to think of known reliability and corroboration as a sliding scale. Where the informant is known from past practice to be reliable . . . no corroboration will be required to support reasonable suspicion. Where the informant is completely anonymous . . . a significant amount of corroboration will be required. However, when the informant is only partially known (i.e., [informant's] identity and reliability are not verified, but neither is [informant] completely anonymous), a lesser degree of corroboration may be sufficient to establish reasonable suspicion.' *United States* v. *Elmore*, 482 F.3d 172, 181 (2d Cir. 2007)." (Emphasis in original.) *State* v. *Torelli*, supra, 103 Conn. App. 653. Our Supreme Court also has noted that "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." (Internal quotation marks omitted.) *State* v. *Hammond*, 257 Conn. 610, 617, 778 A.2d 108 (2001).

In this case, Thayer remained on the telephone with the dispatcher while continuing to follow the defendant and, when the responding police officers arrived, gestured toward the defendant's vehicle. The court found that Thayer was an identifiable citizen informant. Accordingly, when, as here, "an informant provides sufficient information so that he may be located and held accountable for providing false information, the officer is justified in assuming the caller is being truthful in so identifying himself. . . . [C]itizen informers are presumptively reliable if they are identifiable." (Citations omitted; internal quotation marks omitted.) *State* v. *Bolanos*, 58 Conn. App. 365, 369, 753 A.2d 943 (2000).

With respect to the defendant's contention that information supplied by Thayer was not sufficiently corroborated, our resolution of that claim is guided by this court's decision in *State* v. *Torelli*, supra, 103 Conn. App. 652. In *Torelli*, a citizen informant reported an erratic driver to the Branford police department, and, while on the telephone with the police department, the citizen informant followed the defendant in his own vehicle. Id., 649, 656. The citizen informant provided the police dispatcher with the location and direction of travel of the driver as well as the make, model and color of the vehicle. Id., 649. The dispatcher conveyed this information to the responding police officer, who, after corroborating the informant's report, stopped the vehicle. Id. The responding officer, however, never observed any erratic driving. Id., 657. In concluding that a reasonable and articulable suspicion existed to justify the *Terry* stop, this court stated that the responding officer reasonably could have inferred that the informant was sufficiently identifiable to be reliable and that "the information that [the responding police officer] obtained from the dispatcher was sufficiently corroborated to provide a reliable basis for stopping the [vehicle]. Although information about the make, model and color of the [vehicle] was in itself innocuous, the car's location corroborated the informant's report." Id., 656. The *Torelli* court also declined to "assign dispositive weight to the fact that [the responding officer] did not himself observe the defendant's erratic driving" and stated that "[b]ecause of the state's pervasive interest in preventing drunk driving, the officer was not required to wait for erratic driving or an accident to occur before pulling over the defendant." Id., 657.

Here, as in *Torelli*, Wojenski and Armack received a report of an erratic driver. Further, as in *Torelli*, the officers obtained information from the dispatcher pertaining to the make and model of the defendant's vehicle, and these innocuous details about the defendant's

vehicle were corroborated by the observations of Wojenski and Armack. More importantly, through Thayer's ongoing conversation with the dispatcher as she followed the defendant, the location and direction of travel of the defendant's vehicle was conveyed to the police officers. As they came upon the defendant's vehicle, the police officers observed the citizen informant pointing toward the defendant's vehicle, which fit the description transmitted by the dispatcher. The location of the defendant's vehicle further corroborated the report of Thayer.

In arguing that the record lacks sufficient corroborative evidence, the defendant emphasizes that the police officers themselves did not observe any erratic driving. However, as we indicated previously, this court rejected that argument in *Torelli*, under a factual situation similar to the one presented here. See id. We therefore are not persuaded that Wojenski and Armack were required to wait for erratic driving or an accident, potentially causing death or injury to others, before stopping the defendant. Additionally, we also note that the police officers did see the defendant driving very slowly and even stopping momentarily at a green traffic signal. Viewing the totality of the circumstances, we conclude that the information provided to Wojenski and Armack by the Southington police dispatcher was sufficiently corroborated to give the police officers the necessary level of suspicion of operating while under the influence of liquor to justify the *Terry* stop of the defendant.

We now turn to the defendant's claim, as stated in his appellate brief, that the record does not support "the court's finding that the stop was based partially on the observations of erratic driving by the officers."[3]

---

[3] Although the defendant states in his appellate brief that the court found that the police officers had observed *erratic* driving, we note that the court did not make such a finding. The court found that the police officers had observed *slow* driving.

The defendant, in making this argument, refers to the testimony of Wojenski, in which he indicated that the sole basis for the stop was the information that the citizen informant conveyed to the police department, and the testimony of Armack, in which he stated that they "more or less pulled" over the defendant because of the citizen informant's report. Although we agree with the defendant that Wojenski and Armack testified at the suppression hearing that they stopped the defendant's vehicle on the basis of the information conveyed by the citizen informant,[4] we do not agree that the court made a finding about the police officers' stated reasons for the stop. Rather, the court found that the police officers had observed the defendant driving his vehicle in an unusually slow manner, a finding that the defendant does not challenge and one that is supported clearly by the testimony at the suppression hearing. The court then, viewing the circumstances objectively, made a conclusion as to whether the facts it found concerning the information available to Wojenski and Armack, which consisted of the report from Thayer and the police officers' observations of the defendant driving his vehicle slowly, if not stopping at a green traffic signal, and driving fifteen miles per hour in a forty mile per hour zone, gave rise to a reasonable and articulable suspicion to justify the stop.

More specifically, the court, in evaluating whether a reasonable and articulable suspicion existed, was not required to consider only the police officers' stated reason for the stop. "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of

---

[4] We note also that Armack, immediately after testifying that he and Wojenski "more or less" stopped the defendant on the basis of the citizen informant's report, stated that the defendant was driving slowly.

suspicion. . . . Whether a reasonable and articulable suspicion exists depends on the totality of the circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Torelli*, supra, 103 Conn. App. 652; see also *Scott* v. *United States*, 436 U.S. 128, 138, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978) ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action"). Because the test for reasonable suspicion is an objective test, it therefore was not improper for the court to consider all of the information that was available to Wojenski and Armack, including the officers' observations of slow driving, and to conclude that "the information that the defendant was driving erratically, when combined with the police officers' own observations of the defendant" gave rise to a reasonable and articulable suspicion that the defendant was driving while under the influence of intoxicating liquor.

We conclude that the record supports the court's conclusion that the police officers had a reasonable and articulable suspicion to stop the defendant. The court, therefore, properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.